## STATE v. JOHN PIERPONT MORGAN, JR.*

246 N. W. 2d 165.

August 20, 1976—No. 45329.

---

* Certiorari denied, 430 U. S. 936, 97 S. Ct. 1564, 51 L. ed. 2d 782 (1977).

C. Paul Jones, State Public Defender, and *Bruce C. Douglas*, for appellant.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, *Richard B. Allyn*, Assistant Attorney General, and *John Plattner*, County Attorney, for respondent.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

Defendant, John Pierpont Morgan, Jr., was found guilty by a jury in Ramsey County District Court of two counts of first-degree murder. Defendant appeals from the judgment of conviction on the grounds that the trial court erroneously admitted evidence of defendant's participation in other crimes and abused its discretion in failing to sequester the jury or continue the trial in light of pretrial publicity. We affirm.

On August 3, 1973, defendant escaped from the Salem House of Corrections in Massachusetts with John Estrella and John Coveney.[1] After the escape the prisoners traveled to the Midwest with Patricia Hamilton, a friend of Estrella. On August 10, 1973, there was an armed robbery in Madison, Wisconsin, in which

---

[1] Earlier in 1973, defendant had escaped from the State Prison in Stillwater.

one of the items stolen was a "BankAmericard" issued to Darrell Smith. On August 12, 1973, defendant rented a car in Dubuque, Iowa, using the credit card issued to Smith. On that same day Regina Delverde, who had been with the escapees in Massachusetts, flew to Dubuque, Iowa, to rejoin the group. The group then drove to Roy Lake Lodge, near Nisswa, Minnesota, where they rented a cabin under the name of "John Smith."

On August 17, 1973, John Beck, a friend of defendant, joined the group at Roy Lake Lodge. After his arrival Beck and defendant went to Bar Harbor Lounge to drink, leaving Estrella, Hamilton, Coveney, and Delverde at the cabin. According to the testimony of Delverde, the following events then transpired. Estrella, who had been drinking heavily, began arguing loudly with Hamilton and firing his gun. Delverde and Coveney went to the Bar Harbor Lounge to tell defendant and Beck about what happened. There defendant and Beck discussed the subject of "getting rid of" Estrella. Later that night defendant and Beck returned to the cabin telling everyone that "the heat was on" and that they had to get out of the cabin. The group left the cabin and drove in two cars down the road to a wooded area. There defendant pushed Estrella out of the car and into the woods. A shot was heard after which defendant returned to the cars. Then defendant and Beck pulled Hamilton from the car, shoved and kicked her into the woods, and shot her. After the shootings the group returned to the cabin, where defendant and Beck burned their bloodstained clothes. The next day Delverde and Coveney left in one of the cars while defendant and Beck were out on the lake in a boat.

Defendant was subsequently arrested and, after the bodies of Estrella and Hamilton were discovered, he was indicted on two counts of first-degree murder. On November 5, 1973, defendant escaped from the Wadena County jail to a nearby farm where he held the Elmer Weigscheid family hostage for 33 hours. This event received extensive news coverage. After being captured,

defendant pled guilty to a kidnapping charge and was sentenced to 20 years in the Minnesota State Prison.

On defendant's motion for a change of venue, the murder prosecution of defendant was removed to Ramsey County for trial. Defendant also moved for a continuance or in the alternative for sequestration of the jury because of pretrial publicity. Defendant's motion was specifically addressed to two magazine articles, appearing in the April 1974 issue of Good Housekeeping and the February 1974 issue of Inside Detective, which contained prejudicial statements about defendant. The trial court denied the motion, and this court denied defendant's subsequent application for a writ of prohibition whereby he sought to delay prosecution for 6 months. During the trial the court allowed into evidence (1) testimony concerning certain admissions allegedly made by defendant during the Weigscheid kidnapping, and (2) evidence of defendant's participation in the armed robbery in Madison, Wisconsin. After deliberating 9 1/2 hours the jury found defendant guilty on two counts of first-degree murder.

The issues raised on this appeal are:

(1)  Whether evidence of an admission of murder made by defendant during the kidnapping was properly admitted;

(2)  whether evidence of defendant's participation in a prior armed robbery was properly admitted; and

(3)  whether the trial court abused its discretion by denying defendant's motions for a continuance or for a sequestration of the jury.

■  The trial court allowed Weigscheid to testify that he said to defendant:

"[W]e are at your mercy. You can answer this question if you want. You don't have to if you don't want to. You are accused of killing two people up north. Did you kill those people?"

Weigscheid testified that defendant responded:

"* * * [T]hey were a couple of young punks playing in the wrong league. It was either them or us."

In addition, the trial court allowed Weigscheid to testify about the circumstances surrounding the above conversation. Specifically, Weigscheid stated that defendant and another man came into his home and that he and his family were not free to leave because they were held in the home at gunpoint. Defendant complains that this testimony severely prejudiced him in that it revealed his participation in a highly publicized kidnapping and thereby rendered him a prime candidate for punishment in the eyes of the jury.

This court has on numerous occasions recognized the highly prejudicial nature of evidence linking a defendant to other crimes for which he is not on trial and the need to exclude such evidence. In State v. Sweeney, 180 Minn. 450, 455, 231 N. W. 225, 227 (1930) this court stated:

"The general rule in a criminal case is that evidence which in any manner shows or tends to show that the accused has committed another crime independent of that for which he is on trial is inadmissible. The reason is obvious and the rule should be rigorously enforced. The rule, however, like most rules, has certain exceptions not to be stated categorically but among which evidence of other crimes is admissible to prove the accusation when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) the identity of the accused, (5) sex crimes, (6) a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation."

In State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965), we indicated that the admissibility of evidence of other crimes turns on whether the probative value of such evidence outweighs the danger of prejudice to the defendant. In the instant case defendant argues that Weigscheid's testimony was of little probative value because (1) the prosecution had no need for Weigscheid's testimony since it already had an eyewitness to the murder, and (2) the admission was equivocal since Weigscheid also testified

that he had made an earlier statement that "[i]n so many words, I don't know if he [defendant] said he killed him." In addition, defendant urges that the crime of kidnapping and holding a family hostage at gunpoint was likely to prejudice the jury against defendant.

We hold that Weigscheid's testimony was properly admitted. First, the testimony was critical to the prosecution's case. Although the prosecution had an eyewitness testify to the murder, this eyewitness had been substantially discredited by the defense. Second, the admission was highly relevant in that it strongly indicated defendant's guilt. While defendant did not specifically state that he killed Estrella and Hamilton, the implication in defendant's statement is unavoidable. Third, any prejudice to defendant flowing from the jury's knowledge of his participation in the kidnapping was minimized by the trial court's cautionary instructions. The trial court also did not allow the details of the kidnapping to be developed any more than was necessary to provide the context in which the statements were made. Finally, it is apparent that for the prosecution's purposes the fact that defendant had engaged in a kidnapping was only incidental to the fact that defendant had made a damaging admission about his involvement in two murders. If defendant had not been engaged in a crime at the time of this admission, there would have been no question as to its admissibility. This admission should not be excluded simply because defendant was engaged in a crime at the time he made it. See, State v. Martin, 297 Minn. 470, 474, 212 N. W. 2d 847, 850 (1973); State v. Radil, 288 Minn. 279, 284, 179 N. W. 2d 602, 606 (1970), certiorari denied, 401 U. S. 921, 91 S. Ct. 910, 27 L. ed. 2d 825 (1971).

■ At trial the prosecution was allowed to introduce evidence of defendant's participation in the armed robbery in Madison, Wisconsin, on August 10, 1973. The prosecution's justification for this evidence is that it was necessary to prove defendant's motive for the murder of Estrella and Hamilton. According to the prosecution, defendant killed Estrella and his girl friend be-

cause Estrella's noisy activities at Roy Lake Lodge threatened to draw the attention of the police and defendant did not want that to happen because of his participation in the armed robbery in Madison, Wisconsin. We find this justification unconvincing. It is true that the prosecution's eyewitness, Delverde, testified directly that defendant killed Estrella because his activities threatened to draw the attention of the police. However, defendant's reason for avoiding the police was obvious—he had just recently escaped from both the prison in Minnesota and the prison in Massachusetts. The jury was aware of this and thus there was no need to reveal to the jury defendant's participation in the Madison armed robbery in order to establish defendant's motive for the murders.

Although the trial court erred in admitting evidence of the armed robbery, we do not believe this error requires a new trial. It is highly unlikely that the evidence of defendant's participation in an armed robbery "played a substantial role in influencing the jury to convict" defendant of first-degree murder. State v. Wilebski, 307 Minn. 46, 48, 238 N. W. 2d 213, 215 (1976). In addition, the trial court properly instructed the jury that the evidence was being received only for the limited purpose of establishing motive and that defendant was not being tried for any offense except that charged. In light of the overwhelming evidence of defendant's guilt, we hold that defendant was not prejudiced by this evidence, and he is therefore not entitled to a new trial.

■ Defendant also claims that he was entitled either to a continuance of the trial or to a sequestration of the jury because of the pretrial publicity. The question of whether to grant a continuance or to sequester a jury because of pretrial publicity is left to the sound discretion of the trial court. Minn. St. 631.02; State v. Mastrian, 285 Minn. 51, 70, 171 N. W. 2d 695, 707 (1969), certiorari denied, 397 U. S. 1049, 90 S. Ct. 1381, 25 L. ed. 2d 662 (1970). In Mastrian this court indicated its approval of the A. B. A. Standards for Criminal Justice, Standards Relat-

ing to Fair Trial and Free Press (Approved Draft, 1968). Section 3.2(c) of these Standards provides:

"A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material involved. A showing of actual prejudice shall not be required."

Section 3.5(b) of the Standards provides:

"* * * Sequestration shall be ordered if it is determined that the case is of such notoriety or the issues are of such a nature that, in the absence of sequestration, highly prejudicial matters are likely to come to the attention of the jurors."

Thus, whether the trial court abused its discretion in the instant case depends on whether the trial court properly assessed the likelihood that prejudicial publicity would affect the impartiality of the jurors and thereby prevent a fair trial.[2] See, Sheppard v. Maxwell, 384 U. S. 333, 86 S. Ct. 1507, 16 L. ed. 2d 600 (1966); United States v. Delay, 500 F. 2d 1360 (8 Cir. 1974).

We find that the trial court did not abuse its discretion in the instant case by refusing to continue the trial or to sequester the jury. The statements contained in the Good Housekeeping and Inside Detective articles were derogatory and prejudicial to defendant. However, at the time of the voir dire none of the 45 potential jurors in this case had read or seen either the Good Housekeeping or Inside Detective articles.[3] Moreover, the trial

---

[2] See, Rules 25.02 and 26.03, subd. 5, Rules of Criminal Procedure, effective July 1, 1975.

[3] Defendant argues that the trial court may not rely on the statements of jurors because § 3.2(d), A. B. A. Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press (Approved Draft, 1968), provides that when a motion for continuance is made prior to the

court properly admonished the jury not to read any articles or newspaper stories about the case pending the completion of the trial.

This court has consistently given the trial court broad discretion in determining the effect of pretrial publicity. Thus, this court has refused to find that the trial court abused its discretion in denying a change of venue even in cases where there were widely circulated *newspaper* articles containing material prejudicial to the defendant. State v. Annis, 291 Minn. 552, 192 N. W. 2d 419 (1971); State v. Ellis, 271 Minn. 345, 136 N. W. 2d 384 (1965); State v. Lupino, 268 Minn. 344, 129 N. W. 2d 294 (1964), certiorari denied, 379 U. S. 978, 85 S. Ct. 681, 13 L. ed. 2d 569 (1965). The prejudicial publicity presented by the two magazine articles in the instant case falls short of the type of extensive publication that would likely endanger the impartiality of a jury.

In summary, we hold that the statements made by defendant during the kidnapping were properly admitted; that the trial court did not abuse its discretion by refusing to continue the trial or sequester the jury; and that, although the trial court did err by admitting evidence of defendant's participation in the armed robbery in Madison, Wisconsin, this error was not prejudicial.

Affirmed.

---

impaneling of a jury it should be disposed of before impaneling, and the fact that the jury selected satisfies the standards of acceptability should not be controlling. However, we note that § 3.2(d) goes on to provide that the fact that the jury selected is acceptable is not controlling "[i]f the record shows that the criterion for the granting of relief set forth in subsection (c) has been met." Subsection (c) of the A. B. A. Standard clearly provides that determination of whether the publicity will prevent a fair trial may be based "on the court's own evaluation of the nature, frequency, and timing of the material involved." On the facts in this case the trial court evaluated the nature, frequency, and timing of the two magazine articles and concluded that they did not warrant a continuance of the trial. The fact that none of the jurors had read or seen the two magazine articles merely provides further support for the trial court's conclusion.