STATE of Minnesota, Respondent,

v.

Martin CZECH, Appellant.

No. C1–82–898.

Supreme Court of Minnesota.

Feb. 10, 1984.

C. Paul Jones, State Public Defender, Ann Remington, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Nancy J. Bode, Sp. Asst. Attys. Gen., St. Paul, Roger Van Heel, Stearns County Atty., St. Cloud, for respondent.

YETKA, Justice.

Defendant was charged in April of 1981 in Stearns County with two counts of aggravated robbery, one per victim, for allegedly aiding in the armed robbery of a marijuana dealer and the dealer's friend in St. Cloud early on September 26, 1980. In April of 1982, a district court jury found defendant guilty of the count involving the robbery of the drug dealer, but not of the other count. The trial court sentenced defendant to 81 months in prison (which is the presumptive sentence for a severity level VII offense when committed by a person who has a criminal history score of five at the time of sentencing) and ordered the sentence to immediately follow the consecutive 9-year and 2-year federal sentences defendant was already serving. On his appeal from judgment of conviction, defendant contends that the evidence that he aided and abetted the commission of the robbery was legally insufficient, that the trial court prejudicially erred in admitting parts of a tape recording that indicated involvement by defendant in other crimes, that the court also erred in allowing the jurors to use transcripts of the recording as they listened to it, and that the court, having chosen to sentence defendant consecutively, should have computed defendant's sentence duration using the zero criminal history column. We affirm defendant's conviction, but modify defendant's sentence to that obtained using the zero criminal history column.

1. There is no merit to defendant's contention that the evidence failed to establish that he aided and abetted the commission of the robbery. The evidence showed (a) that one Roderick William Head and defendant were in the victim's apartment a couple of days before the robbery, (b) that they knew that the victim was a drug dealer and had reason to suspect that she might have a lot of cash and marijuana on hand, (c) that, just 12 hours before the robbery, defendant possessed the handcuffs that apparently were used in the robbery and was talking to undercover agents about getting a gun and posing as a police officer in committing a drug rip-off, (d) that Head was one of the robbers, (e) that defendant later admitted his involvement in the crime to the undercover agents, and (f) that defendant did not deny it when the victim later accused him of "ripping her off."

There is also no merit to the related contention that defendant should be granted relief because the jury verdicts were inconsistent. *See State v. Olkon,* 299 N.W.2d 89, 104 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), and *State v. Juelfs,* 270 N.W.2d 873, 874 (Minn.1978) (both stating the general rule that a defendant who is found guilty of one count of a two-count indictment or complaint is not entitled to a new trial or a dismissal simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent).

2.–3. Defendant makes two claims of error concerning the admission of tape recordings of conversations he had with undercover agents before and after the robbery was committed.

First, he argues that the court prejudicially erred in refusing to launder the tapes so that they did not include any evidence indicating defendant's involvement in other crimes or bad acts. The trial court was of the view that the prosecutor was justified in showing the context of the conversation; that is, why the undercover agents were talking with defendant. This revealed to the jury that the agents were conducting an undercover stolen property investigation. Our decision in *State v. Morgan,* 310 Minn. 88, 246 N.W.2d 165 (1976), *cert. denied,* 430 U.S. 936, 97 S.Ct. 1564, 51 L.Ed.2d 782 (1976), supports the trial court's ruling. In *Morgan,* the trial court in a murder trial admitted evidence that the defendant confessed to the murder during the course of a subsequent kidnapping. We ruled that the trial court properly allowed the prosecutor to show, in a limited way, the context in which the confession was made. *See also State v. Olkon,* 299 N.W.2d at 101 (allowing back-

ground evidence about the broader police investigation for the purpose of showing how undercover officers came to be associated with the defendant).

■ The trial court also allowed statements by defendant relating to guns and certain fights. We hold that the trial court did not err in allowing that evidence. Defendant's statements relating to the guns were relevant because they provided the context for defendant's statement that he was looking for a gun to use in committing the planned drug rip-off. Statements by defendant relating to fights in St. Cloud were relevant in that they placed defendant in St. Cloud with Head, who was identified as one of the two men who actually committed the robbery. Under the circumstances, we believe that the trial court properly admitted the evidence.[1]

■ Defendant's related contention concerns the trial court's decision to let the jurors follow the copies of the transcript of the tape recording as they listened to the tape as it was played during the trial. We have dealt with this same basic issue in at least two cases, State v. Barbo, 339 N.W.2d 905 (Minn.1983), and State v. Olkon, 299 N.W.2d 89 (Minn.1980), both of which uphold the trial court's decision to let the jurors follow a transcript of a tape as they listened to the tape. Here, parts of the tape apparently were hard to hear and we believe that the trial court therefore properly let the jurors use the transcript. The trial court also properly instructed the jurors concerning the use of the transcript when they listened to the tape.

4. Defendant's final contention relates to the trial court's computation of the duration of the sentence, which the court properly ordered to run consecutively under Minnesota Sentencing Guidelines and Commentary II.F.1. (1982). Defendant argues that instead of using the column for a criminal history score of five, the court should have used the zero criminal history column.

Section II.F.1. permits consecutive sentencing "[w]hen a prior felony sentence for a crime against a person has not expired or been discharged and one or more of the current felony convictions is for a crime against a person, and when the sentence for the most severe current conviction is executed according to the guidelines * *." The 1982 version of the Guidelines contained a provision dealing explicitly with the computation of the presumptive sentence when sentencing consecutively under II.F.2., but was silent on the manner of computing the presumptive sentence duration when sentencing consecutively under II.F.1. The provision dealing with II.F.2. reads:

> For persons given consecutive sentences, the sentence durations for each separate offense sentenced consecutively shall be aggregated into a single presumptive sentence. The presumptive duration for offenses sentenced consecutively is determined by locating the Sentencing Guidelines Grid cell defined by the most severe offense and the offender's criminal history score and by adding to the duration shown therein the duration indicated for every other offense sentenced consecutively at their respective levels of severity but at the zero criminal history column on the Grid. The purpose of this procedure is to count an individual's criminal history score only one time in the computation of consecutive sentence durations.

The Commission recently remedied the deficiency with respect to II.F.1. by adopting

---

**1.** The basic issue presented is one that can arise in a number of different contexts. One context in which it often arises is that of admissibility of statements made by the defendant during police interrogation. In State v. Hjerstrom, 287 N.W.2d 625, 627 (Minn.1979), we stated that, "assuming a proper objection, immaterial and irrelevant portions of an extrajudicial interrogation of a defendant should generally not be received in evidence." The test that the trial court must use in determining what to admit and what not to admit in such a case is the basic test of Minn.R.Evid. 403, whether the potential of the evidence for unfair prejudice outweighs its probative value. The trial court's refusal to launder the tape recording in this case was fully consistent with Hjerstrom and Minn.R.Evid. 403.

the following language, to be inserted immediately after the above-quoted language:

When a current conviction for a crime against a person is sentenced consecutive to a prior indeterminate or presumptive sentence for a crime against a person, the presumptive duration for the current conviction is determined by locating the severity level appropriate to the current conviction offense and the zero criminal history column or the mandatory minimum, whichever is greater.

Even if the Commission had not adopted this new language, we would hold that the trial court, having decided to sentence defendant consecutively under II. F.1., should have used the zero criminal history column in computing defendant's sentence duration and imposed a 24-month sentence. This is because the amendment is simply a clarifying amendment. As such, it is authority for our interpretation of the 1982 version.

Affirmed as modified.