**STATE of Minnesota, Respondent,**

v.

**John Patrick McDONALD, Appellant.**

**No. C6–86–50.**

Court of Appeals of Minnesota.

Oct. 21, 1986.

Review Denied Nov. 26, 1986.

---

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Stephen Rathke, Crow Wing Co. Atty., Brainerd, for respondent.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

John McDonald appeals from his conviction of first degree arson, Minn.Stat. § 609.561, subd. 1 (1984), contending there was insufficient evidence to support the verdict and the trial court abused its discretion by admitting evidence of another crime and three prior convictions for impeachment. We affirm.

## FACTS

About 9:00 p.m. on December 7, 1984, Florence Harrington, owner of a trailer park in Deerwood, Minnesota, saw flames shooting out the back of a trailer owned by LuAnn Wikelius.[1] Harrington also saw flames in the living room and kitchen area at the front of the trailer. Carl Duenow, a neighbor, saw appellant's car parked in front of the trailer with the trunk open between 8:45 and 9:00 p.m. Jeffrey Lashyro also saw a car similar to appellant's car parked near the trailer and heard it drive away around 9:00 p.m. Firefighters arrived shortly after 9:30 p.m. and extinguished the blaze two hours later.

Charles Isle, a Deerwood police officer and the father of LuAnn Wikelius, entered the trailer after the fire was out. Isle found signs of fire in a kitchen wastebasket and collected a bag of towels and clothing from the trailer that "smelled like they had some kind of fuel or something on them."

Investigator Frank Ball searched the trailer with State Fire Marshall Arnold Johnson. Ball found some "real heavy char" in the wastebasket, but said most of the fire damage was in a back bedroom and bathroom. He did not observe anything remarkable about any of the electrical outlets in the trailer and said the areas above and below the fusebox were equally burned. He said if the fusebox had been the cause of the fire, there would have been more severe damage above it than below. Ball collected samples at the scene and said the clothing that Isle collected smelled "like kerosene or a heavy fuel oil."

Johnson said the "burn pattern" in the bedroom started at the floor level and there was a hole burned through the carpet. He smelled an odor "similar to kerosene" and concluded "there was something on that carpeting that would cause it to burn faster than other areas." He said that when an accelerant is used to start a fire, there is a "good, raging fire" about five minutes after ignition, whereas an electrical fire is a "slow, smoldering type of a fire" in which heat builds up over several hours until ignition occurs. An electrical malfunction causes wiring to melt and show characteristic "beading and fusing." Johnson did not find any indications of an electrical fire or any evidence that flames spread from the bedroom to the kitchen and ignited the contents of the wastebasket.

David Peterson, a chemist with the Bureau of Criminal Apprehension, analyzed the samples collected by Isle, Ball, and Johnson. He found a "fairly large amount" of a "heavy petroleum distillate similar to kerosene" in two of the three samples.

Wikelius testified that on December 7 she argued with appellant, then left the trailer to pick up her children at school. She later called appellant and asked him to leave; he refused, so she went to her parents' home. Appellant called her about 9:10 p.m. and asked her to come to the

---

1. Appellant lived at the mobile home with Wikelius and her four children. She married him after the fire but they were separated at the time of trial.

trailer and talk. She asked appellant what he was going to do if she didn't come home; he replied: "I hope you have good insurance."

On the morning of December 7, appellant had an argument with Wikelius because she was pregnant but had not seen a doctor. He went hunting for a few hours, then went to the municipal liquor store and drank six or seven beers and bought a 12-pack. He returned to the trailer about 3:30 p.m. and drank some more beer. When he called Wikelius, she told him to pack his things and drop off his key. Appellant said he drove his car up to the trailer, loaded his things into the trunk, locked the door, and left the trailer at 8:00 p.m.

Appellant said he talked with Isle for 30 or 40 minutes at a Phillips '66 station before he drove to the Isle residence and dropped off his key at 8:45 or 9:00 p.m. Then he went back to the gas station and told Isle he had dropped off the key.[2] He said a can of gasoline and charcoal lighter fluid were stored in the entryway but there wasn't any kerosene or diesel fuel at the trailer. Appellant denied having any contact with gasoline or lighter fluid that night and said he did not spread any liquid in the trailer or start the fire.

The trial court allowed the State to impeach appellant with two felony assault convictions and a misdemeanor theft conviction, but excluded a felony conviction for criminal damage to property. Defense counsel brought out the prior convictions when appellant testified. On cross-examination, appellant said he also pleaded guilty to disorderly conduct for a "lighter fluid incident" which occurred on August 5, 1984. The trial court conducted a hearing to determine if evidence of the "lighter fluid incident" was admissible.

Wikelius testified in chambers that on August 5 she argued with appellant, left the trailer to take a walk, then got into the car and went to sleep. When appellant knocked on the car window and told her to come inside, she told him she was going to sleep in the car. He went into the trailer and came out with a can of charcoal lighter fluid in his hand. Wikelius got out of the car and left. She denied that appellant poured lighter fluid on the car or threatened to set her on fire, as was apparently stated in a police report of the incident.

The trial court ruled the evidence admissible, warned the prosecutor not to elicit testimony that appellant put lighter fluid on the car, and gave the jury a cautionary instruction. Appellant then testified regarding the incident, but was not asked whether Wikelius got out of the car and left after he appeared with the can of lighter fluid in his hand.

The jury found appellant guilty of first degree arson. He was sentenced to imprisonment for a term of 65 months.

## ISSUES

1. Was there sufficient evidence for the jury to reasonably conclude appellant was guilty of first degree arson?

2. Was the "other crime" evidence clear and convincing?

3. Was appellant denied a fair trial when two felony convictions and a misdemeanor theft conviction were admitted to impeach his testimony?

## ANALYSIS

1. Appellant first contends there was insufficient evidence for the jury to conclude he was guilty of first degree arson. Upon review of a jury verdict, we are limited to determining:

whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. We cannot retry the facts, but must take the view of the evidence most favorable to

---

2. Isle said he saw appellant at 8:00 p.m. and talked with him for about 30 minutes, but did not see him again until after the fire.

the state and assume that the jury believed the state's witnesses and disbelieved any contradictory evidence.

*State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted); *see State v. Ulvinen*, 313 N.W.2d 425 (Minn.1981).

The jury's verdict was based on circumstantial evidence because there was no direct evidence that appellant was in possession of an accelerant or set fire to the trailer. *See State v. Berndt*, 392 N.W.2d 876 (Minn. March 21, 1986). A conviction may be based on circumstantial evidence

> so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*Id.* at 880 (citations omitted).

Here, the State presented evidence that appellant had an argument with his girlfriend, the owner of the trailer, on the day of the fire. When he talked with her later that night, she told him to get out. He then said: "I hope you have good insurance." Appellant claimed he packed his things into the trunk of his car and left the trailer at 8:00 p.m. However, two neighbors saw his car at the trailer fifteen minutes before the fire. Expert testimony showed there were two separate areas of fire damage. A State Fire Marshall concluded that an accelerant was used to start the fire. There was a smell of kerosene in the trailer, and a chemist found traces of fuel oil or diesel fuel in the fire residue.

■ The State's witnesses established that appellant had both motive and opportunity to commit the crime. There was testimony which, if credited by the jury, would support an inference that the fire was intentionally set and refute any other theory on the origin of the fire. The determination of the credibility of the witnesses and the weight of their testimony was exclusively within the province of the jury. *See State v. Jones*, 347 N.W.2d 796, 801 (Minn.1984). We conclude that there was sufficient circumstantial evidence for the jury to reasonably conclude appellant was guilty of first degree arson.

■ 2. The general rule is that evidence of another crime committed by an accused is inadmissible. *See State v. Forsman*, 260 N.W.2d 160, 166 (Minn.1977). However, evidence of other crimes is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Minn.R.Evid. 404(b) (1986). A trial court's admission of evidence of other crimes will not be reversed unless an abuse of discretion is clearly shown. See *State v. Ture*, 353 N.W.2d 502, 515 (Minn.1984).

> [I]n order for such evidence to be admissible the trial court must determine that there is "clear and convincing" evidence that the defendant participated in the crimes or bad acts sought to be admitted. The court must also determine that the evidence of prior crimes or bad acts is "relevant and material to the state's case." In addition, it must rule that the probative value of the evidence outweighs any potential for "unfair prejudice."

*State v. Doughman*, 384 N.W.2d 450, 454 (Minn.1986) (citations omitted).

■ Appellant's primary contention is that the State failed to prove the "lighter fluid incident" by clear and convincing evidence. We cannot agree. Appellant pleaded guilty to disorderly conduct in connection with that incident. Wikelius' testimony regarding the incident was uncontradicted. Appellant gave substantially similar testimony after the trial court ruled that evidence of the incident was admissible. There is no doubt that the incident took place. *Compare Doughman*, 384 N.W.2d at 455. We find no abuse of discretion.

■ Appellant also contends he was prejudiced by improper references to the "lighter fluid incident" in the prosecutor's closing argument. The prosecutor stated that Wikelius was "scared" and ran when she saw appellant with the lighter fluid. The prosecutor apparently confused Wikelius' testimony at the *Spreigl* hearing with the trial testimony. We believe that any prejudice from this inadvertent misstate-

ment was cured by the trial court when it instructed the jury that arguments of counsel were not evidence, and that other allegedly improper arguments were reasonable inferences from the evidence.

■ 3. A prior felony conviction may be admitted to impeach a witness if the trial court finds that its probative value outweighs its prejudicial effect. *See* Minn.R. Evid. 609(a)(1) (1986); *see also State v. Jones,* 271 N.W.2d 534 (Minn.1978) (five factors used to balance probative value against prejudicial effect). A trial court's admission of evidence must be sustained unless a clear abuse of discretion is shown. *See State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979).

■ Here, the trial court admitted appellant's two felony convictions for assault but excluded a third conviction for criminal damage to property. Appellant testified on direct examination that he was a convicted felon and the nature of his crimes was not disclosed to the jury, which was instructed on the proper use of that evidence. *See State v. Jones,* 347 N.W.2d 796, 802 (Minn. 1984). We have evaluated the relevant factors, and conclude that the trial court did not abuse its discretion by admitting appellant's felony convictions to impeach his testimony. *See Jones,* 271 N.W.2d at 537–538.

■ The trial court also admitted appellant's misdemeanor theft conviction under Minn.R.Evid. 609(a)(2). Misdemeanor convictions are not admissible unless they involved crimes of dishonesty or false statement. *See* Minn.R.Evid. 609(a) and Advisory Committee Comment. The supreme court has held that misdemeanor theft is not a crime involving dishonesty or false statement. *See State v. Darveaux,* 318 N.W.2d 44 (Minn.1982); *but see State v. Stanifer,* 382 N.W.2d 213 (Minn.Ct.App. 1986) (aggravated robbery is a crime involving dishonesty). It was error to admit the misdemeanor theft conviction.

Appellant contends the error was compounded when the prosecutor stated in his closing argument that the law presumes that a person with a criminal record is not believable. Defense counsel did not immediately object, but later moved for a mistrial. The trial court denied the motion, informed the jury that the prosecutor made a mistake, and instructed the jury on the proper use of appellant's convictions.

■ The evaluation of the prejudicial effect of improper arguments by a prosecutor is a matter within the discretion of the trial court. *See Ture,* 353 N.W.2d at 516 (Minn.1984) (citing *State v. Fossen,* 282 N.W.2d 496, 503 (Minn.1979)). We have already held two other felony convictions were properly admitted and that there was sufficient evidence to support the jury's verdict. The trial court gave an appropriate cautionary instruction to the jury. Under these circumstances, erroneous admission of the misdemeanor theft conviction and the improper remarks by the prosecutor were not so prejudicial as to require reversal of appellant's conviction. *See Darveaux,* 318 N.W.2d at 48–49.

## DECISION

There was sufficient circumstantial evidence for the jury to reasonably conclude that appellant was guilty of first degree arson. Clear and convincing evidence supported admission of evidence of another crime committed by appellant. The trial court erred by admitting a misdemeanor theft conviction for impeachment, but that error was harmless because two felony convictions were admissible, the jury was properly instructed, and there was ample evidence of guilt.

Affirmed.