STATE of Minnesota, Respondent,

v.

Ronnie Irwin STAFFORD, Appellant.

No. C6–86–1313.

Court of Appeals of Minnesota.

May 5, 1987.

Review Denied June 26, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Cathryn Y. Middlebrook, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant Ronnie Stafford was convicted of criminal sexual conduct in the third degree, Minn.Stat. § 609.344, subd. 1(c) (1984), and criminal sexual conduct in the fourth degree, Minn.Stat. § 609.345, subd. 1(c) (1984). He claims he was denied a fair trial by references to his prior incarceration, misconduct in closing argument, and by erroneous evidentiary rulings. He also contends the evidence was insufficient to support the conviction. We affirm.

## FACTS

L.J. was approached by appellant at a downtown St. Paul bus station around 8:00 p.m. on February 6, 1986. L.J. lived about a block away. Appellant asked L.J. if she was Bill Morton's lady, and told L.J. he had been in prison with Morton. Morton was a friend of L.J.'s and was incarcerated. Appellant and L.J. struck up a friendly conversation and smoked a marijuana cigarette together. Appellant asked to use L.J.'s bathroom and the two went to her apartment.

L.J. went into her bedroom and began getting ready to go to work at P.J. Clark's, a downtown bar. Appellant came into her bedroom, but left when she told him to

leave. He returned and started fondling her, touching her breasts. She said appellant was supposed to be Bill's friend, and appellant replied, "Fuck Bill, Bill won't know," but left the bedroom when L.J. told him to stop.

Appellant told L.J. he was leaving, and L.J. let him out the front door. L.J. asked if they could just be friends. Appellant told her that would not be possible unless they were "intimate friends." Appellant then pushed his way back into the apartment, locked the door, and pushed L.J. down on the floor. He pulled her pants down and stuck his hand inside her mouth, scraping the roof of her mouth with his fingernails. He hit her in the face, and then forcibly engaged in sexual intercourse with her. Afterwards he choked her, dragged her into the bedroom, and told her not to call the police.

After appellant left, L.J. called Tracy Weed at P.J. Clark's. Weed testified L.J. was hysterical and crying. The bouncer at P.J. Clark's picked L.J. up and brought her to the bar. L.J. told Weed she had been raped and that the inside of her mouth was cut. Weed noticed swelling on L.J.'s face and bruises on her cheeks and body. The manager of P.J. Clark's called the police. L.J. told the police the suspect was named "Ronnie" and was a black male, 5' 7" tall, 155–160 pounds, 21–22 years old, wearing a black Michael Jackson baseball cap, black leather coat and gray pants.

The police later picked appellant up and brought him to St. Paul Ramsey Hospital, where L.J. positively identified him as her assailant. The hospital examination revealed a bruise on her jaw and under her eye, as well as scratches on the roof of her mouth.

The next day at the police station, L.J. identified appellant from a photo lineup of twenty men. L.J. viewed the photographs again during the trial and identified appellant as her assailant. She positively identified the pants worn by appellant on the evening of the assault.

Through investigation, the police discovered that Bill Morton had asked a fellow inmate, Claude Woods, to find somebody on the outside to "hit on," or attempt to seduce, L.J. to test her loyalty and faithfulness. Woods proposed this plan to appellant and gave appellant L.J.'s name, place of residence and place of work.

Appellant did not testify. He was convicted of criminal sexual conduct in the third and fourth degree and was sentenced to 49 months imprisonment for the third degree conviction. The fourth degree conviction was vacated at sentencing.

## ISSUES

1. Was appellant denied a fair trial by references to his prior incarceration?

2. Did the prosecutor commit misconduct in the closing argument?

3. Did the trial court's evidentiary rulings violate appellant's right to a fair trial?

4. Was the evidence sufficient to support the jury verdict?

## ANALYSIS

### I.

*Fair Trial*

During trial numerous references to appellant's previous incarceration were made. L.J. testified that appellant introduced himself as a friend of Bill Morton who had been in St. Cloud Reformatory with Morton. Appellant did not object to these references. While relating L.J.'s account of the incident, the police officer testified that appellant had been in prison. Again, appellant did not object. The police officer also related appellant's warnings to L.J. that she should not contact the police because he was not going back to jail. Appellant made no objection on the record. Finally, another officer testified that appellant told L.J. he would return to St. Cloud if she reported the incident. Appellant's objection was overruled. Later, after both sides rested, appellant objected in chambers to all the prior references to his incarceration.

Any reference to a defendant's prior record has "great potential for unfair prejudice." *State v. Hjerstrom*, 287 N.W.2d 625, 628 (Minn.1979). Such evidence, how-

ever, may be relevant to establish identity, to provide the context for a statement or a conversation, or for other legitimate purposes. *See State v. Halverson,* 381 N.W.2d 40, 43 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 21, 1986) (incarceration relevant to identity); *State v. Czech,* 343 N.W.2d 854, 856–57 (Minn.1984) (references to other crimes relevant to show context of conversations with undercover agents). The trial court must balance the probative value of the evidence against its potential for unfair prejudice. Minn.R. Evid. 403. If there is doubt as to the balance, the evidence should be excluded.

The State contends references to appellant's prior incarceration were relevant to establish identity and to provide context, both for appellant's initial approach to L.J., and his threat to her after the assault. We do not fully address this issue, however, since we agree with the trial court that appellant failed to make a timely objection to this evidence. *See State v. Senske,* 291 Minn. 228, 231, 190 N.W.2d 658, 661 (1971) (objection should be made when evidence is presented).

█ A defendant who fails to timely object does not forfeit a claim of trial error if the failure is plain error. Minn.R.Evid. 103(d); *State v. Gruber,* 264 N.W.2d 812, 817 (Minn.1978). We cannot say it was plain error to admit the evidence. The supreme court has affirmed admission of evidence of other crimes or prior incarceration which provides the context for a statement or conversation. *See State v. Gonzales-Guerrero,* 364 N.W.2d 792, 793–94 (Minn.1985).

In *Gonzales-Guerrero,* a sexual assault suspect told police he was the victim of a case of mistaken identity and that he had once been falsely arrested on a rape charge. *Id.* at 793. While noting that the reference could easily have been excised, the court affirmed its admission, stating it

> was relevant evidence in that it was defendant's way of trying to persuade the police that he was again the victim of a mistaken identification.

*Id.* at 794.

Appellant's statement to L.J. that he had been in prison with Bill Morton was argu-

ably more relevant than the statement in *Gonzales-Guerrero.* It showed why L.J. was willing to talk to him, share a marijuana cigarette, and let him into her apartment. *See State v. Czech,* 343 N.W.2d at 856–57 (defendant's references to other crimes showed why undercover agents were talking with him). The references to incarceration could have been excised from the conversation without damage to the context, but under *Gonzales-Guerrero* we find the reference was not plain error.

We do not address the relevancy of the reference to identification, nor the admission of other references to appellant's prior incarceration, which were cumulative.

## II.

### Closig Argument Misconduct

█ Appellant claims the prosecutor committed misconduct in his closing argument. We find this issue has been waived by appellant's failure to object or to seek cautionary instructions. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984). Instead, defense counsel chose to counter-argue in his closing argument. *See State v. Whisonant,* 331 N.W.2d 766, 769 (Minn.1983).

## III.

### Evidentiary Ruling

Appellant personally challenges several evidentiary rulings. He claims he was denied a fair trial because the court excluded relevant evidence regarding L.J.'s credibility.

█ Appellant sought to introduce evidence, through Bill Morton's testimony, of L.J.'s prior statements about her virginity and chastity. Her statements were allegedly false. The trial court ruled the evidence was inadmissible under Minn.R.Evid. 608(b). This ruling was correct. Specific instances of witness's conduct for the purpose of attacking her credibility may not be proved by extrinsic evidence. *See State v. Clark,* 296 N.W.2d 359, 368 (Minn.1980). Further, the evidence was inadmissible under Minn.R.Evid. 404(c) as improper evi-

dence of the victim's previous sexual conduct.

■ Appellant sought to introduce evidence, through Bill Morton's testimony, that L.J. had a certain sexual preference. This evidence was properly precluded by Minn.R.Evid. 404(c). *See State v. Mar,* 291 N.W.2d 223, 224–25 (Minn.1980) (in prosecution for sexual assault trial court properly excluded testimony offered by defense that victim was homosexual).

Appellant sought to introduce the testimony of two witnesses who, in August 1985, got into a fight with William Benton, a former boyfriend of L.J.'s. They would have testified that Benton told them the fight was provoked by L.J.'s accusations that the two had raped her, but that Benton later apologized to them when L.J. admitted the accusation was false. In her testimony, L.J. denied ever making a false claim of rape.

■ Benton was not found for trial. Appellant sought to introduce Benton's statements to the witnesses through their testimony. The trial court correctly excluded this hearsay testimony. Minn.R.Evid. 801. Without Benton's statements, the only thing the witnesses could testify about was that they had been in a fight with Benton because he thought they had raped his girlfriend and they had not done so. The trial court found this irrelevant to the case at hand because it shed no light on L.J.'s credibility. Without Benton's inadmissible hearsay statement, there was no evidence that complainant had made a prior false accusation of rape. *See State v. Gerring,* 378 N.W.2d 94, 96–97 (Minn.Ct.App.1985). Further, the proffered evidence represented an attempt by appellant to impeach L.J.'s credibility through extrinsic evidence, a violation of Minn.R.Evid. 608(b).

■ Finally appellant argues the trial court erred by excluding testimony from defense witness Michael Byrd that L.J. asked him for marijuana on the day of the assault. This evidence was without foundation. Byrd did not know L.J.'s name or the date of the conversation. He claimed he saw her talking with appellant during the afternoon daylight hours. We affirm the trial court's ruling. The suppressed evidence was of marginal value, and since L.J. freely admitted sharing a marijuana cigarette with appellant before the assault and was repeatedly questioned about her marijuana use during cross-examination, there was no prejudice to appellant by this ruling.

## IV.

### *Sufficiency of the Evidence*

■ We have reviewed the record and find the evidence sufficient to sustain appellant's convictions. L.J.'s testimony was positive, and largely unimpeached. The State produced other evidence, including her prompt complaint, her emotional state, and the physical and medical evidence as testified to by different neutral witnesses. *See State v. Reinke,* 343 N.W.2d 660, 662 (Minn.1984); *State v. Kennie,* 381 N.W.2d 13, 16 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. April 11, 1986).

### DECISION

The admission of evidence of appellant's prior incarceration was not plain error. Appellant was not denied a fair trial by the trial court's evidentiary rulings. The evidence was sufficient to support his convictions.

Affirmed.