STATE of Minnesota, Respondent,

v.

Phillip Francis CARPENTER, Appellant.

No. C6–89–225.

Court of Appeals of Minnesota.

Oct. 31, 1989.

Review Granted Jan. 12, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Johnson, Hennepin County Atty., Anne E. Peek, Asst. County Atty., Minneapolis, for respondent.

Joseph S. Friedberg, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, C.J., HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Phillip Carpenter was convicted of third degree criminal sexual conduct and sentenced to 30 months imprisonment. On appeal, Carpenter argues that the trial court's exclusionary rulings denied him a fair trial. We reverse and remand for a new trial.

## FACTS

In the summer of 1987, K.O., age 14, and her family moved from Kansas City, Missouri to Minneapolis, Minnesota. Her family joined a local church in Bloomington, Minnesota. K.O. became active in the junior high school youth group at the church. K.O. had trouble adjusting to her new home and school. Some members of the church community therefore suggested that K.O. contact appellant, Phillip Carpenter, and his wife for assistance in making the transition. Appellant, age 24, was responsible for the high school youth group at the church. The Carpenters were not immediately able to help K.O.

Appellant, however, approached K.O. on February 28, 1988, and offered to spend time with her. K.O. agreed, and the next day appellant took K.O. to a boat dealership to look at a boat. K.O. testified that appellant introduced her to the boat salesman as his wife. Appellant denied making any such introduction. The salesman, however, said that he assumed appellant and K.O. were married because appellant was hugging and kissing K.O. K.O. testified that appellant's actions confused her. K.O. asked J.O., her older sister, what appellant intended. J.O. interpreted appellant's actions as an attempt to be nice.

A few evenings later, appellant met K.O. after church and they went for a drive. Appellant parked along the river bluffs overlooking the Mississippi River. K.O. said that appellant hugged her, nuzzled his face close to hers, and called her "sweetheart." On the drive home, appellant allegedly tried to kiss K.O. K.O. testified that when she resisted, appellant explained he was only testing her because he had heard she was not virtuous.

K.O. testified that on March 6, 1988, she and appellant again went for a drive after church. After they parked in a vacant lot, appellant kissed her and touched her breast over her clothing. A police officer arrived and shined a light into the truck. The officer testified that appellant approached the squad car and said he was only kissing his girlfriend. Since the officer thought

K.O. was about 20 years old, he took no action. The officer later identified K.O. in a photographic lineup. Appellant testified that he and his wife spent the evening of March 6, 1988, with friends. K.O. said she told J.O. about this incident. J.O. recommended that K.O. tell someone about appellant's behavior.

K.O. told a school counselor about her relationship with appellant. The counselor called the pastor at the church and told him of K.O.'s allegations. The pastor ordered appellant to take care of the situation and to discuss the allegations with K.O.'s parents. K.O. testified appellant confronted her at a party that evening and said they would have to cool their relationship until the rumors died down. Appellant called the school counselor about a week later and said he had K.O.'s best interest at heart.

Appellant met with K.O.'s mother to discuss her concerns about appellant and K.O.'s relationship. K.O.'s mother objected to appellant's keeping K.O. out late without permission, complimenting K.O.'s appearance excessively, and telling K.O. she was too good to work in a fast food restaurant. After their discussion, K.O.'s mother agreed to allow K.O. to work for appellant's painting business. However, K.O.'s mother said K.O. could not work alone with appellant.

K.O. testified she only worked one day painting for appellant, for which she was paid $50. K.O. said, however, that she told her mother she was painting on other occasions when she and appellant would be together. To avoid suspicion, K.O. would explain that her clothes were not covered with paint because she taped and cleaned. She also testified that appellant paid her even though she did no work for him.

In early April 1988, appellant gave K.O. a ride to a birthday party. K.O. testified that they stopped at appellant's house on the way to the party. She said that appellant carried her upstairs to his bedroom. She touched his penis and he digitally penetrated her. K.O. testified that she was embarrassed and uncomfortable with this sexual activity. When appellant allegedly attempted to have intercourse with K.O., she refused. They then left for the birthday party.

On April 8, 1988, K.O. babysat the children of some church members. K.O. testified that appellant came to the house after the children had gone to bed. K.O. said they began to have sexual intercourse. She testified that she was confused and frightened and that the penetration was painful. After being interrupted by a telephone call, K.O. told appellant she did not want to have sex because she wanted her first sexual experience to be more romantic. K.O. said that when she returned home there was blood on her underwear. Both appellant and his wife testified that they spent the evening of April 8, 1988, at home. T.H. and K.H., two friends of K.O. who visited her while she was babysitting, said appellant was not there.

On April 11, 1988, appellant met K.O. after school. K.O. testified they drove to a hotel in St. Louis Park, Minnesota, and checked into Room 707. Appellant opened a bottle of champagne and they drank a toast to each other. K.O. said that appellant used the rest of the champagne to wash off her feet. K.O. testified that they engaged in sexual intercourse and that he performed cunnilingus on her. She testified that the intercourse was painful and that she was frightened. Appellant told K.O. he was risking everything to have sex with her: his wife, his reputation, and his car. He then drove K.O. home. K.O.'s mother testified that K.O. was unusually quiet and distressed on the night of April 11, 1988.

Appellant testified that on April 11, 1988, he took K.O. to strip wallpaper at a duplex in connection with some house painting for which he was responsible. After dropping her off, he met his wife for dinner. Appellant said that following dinner he and his wife picked up K.O. at the duplex and gave her a ride home. During this drive, appellant and his wife told K.O. about their plans for a romantic evening at the Holiday Inn, including details such as the room number. Appellant and his wife testified that after dropping off K.O. at home, they spent the night at the Holiday Inn.

The owner of the duplex acknowledged that appellant had bid on the contract to paint the duplex. However, he testified that appellant had not been awarded the contract. Moreover, he said no one had stripped the wallpaper from the duplex.

On April 25, 1988, K.O. told the school counselor about the events at the hotel. The counselor reported the incident to Child Protection Services, who forwarded the information to the police. A police detective interviewed K.O. the next day. In a taped statement, she said that she had had sexual intercourse with appellant. K.O. laughed when she made this statement. She later testified that she laughed because she was embarrassed.

Dr. Leslie Sharpe performed a medical examination of K.O. on June 7, 1988. He found a tear in K.O.'s hymen. This tear had occurred six to eight weeks prior to the exam. This tear was consistent with K.O.'s claim that she and appellant engaged in sexual intercourse on April 11, 1988, but was also consistent with appellant's claim that K.O. had been digitally penetrated by one R.F. When appellant offered to have R.F. testify that he had so penetrated K.O., the trial court ruled that the testimony was inadmissible.

Appellant was charged with third degree criminal sexual conduct based on sexual penetration with someone between the ages of 13 and 16. Minn.Stat. § 609.344, subd. 1(b) (1986). After a trial by jury, appellant was found guilty of this offense. He was subsequently sentenced to 30 months imprisonment.

## ISSUE

Did the trial court abuse its discretion in excluding evidence of complainant's prior sexual conduct?

## ANALYSIS

Generally, "[a] trial court has broad discretion to make evidentiary rulings," *State v. Larson*, 389 N.W.2d 872, 874 (Minn.

1986), and absent an abuse of that discretion, the trial court's ruling will stand. *State v. Jones*, 347 N.W.2d 796, 802 (Minn. 1984).

Dr. Sharpe testified that K.O. had a slightly torn hymen. He said this tear was consistent with either sexual intercourse or digital penetration. After testifying to her virginity, K.O. was asked on cross-examination whether a youth, R.F., had digitally penetrated her and whether she told another youth, K.H., that R.F. had digitally penetrated her. K.O. said that neither event had occurred. Appellant contends that the trial court's exclusion of R.F.'s testimony (offered but not received) that he had digitally penetrated K.O. was an abuse of discretion.[1]

The state argues that the trial court's ruling was not an abuse of discretion because appellant gave no prior notice of R.F.'s testimony under either of the state's rape shield provisions, Minn.Stat. § 609.347 or Minn.R.Evid. 404(c), and because the evidence would have been more prejudicial than probative. We are not persuaded by the state's argument on either count.

In 1975 the legislature enacted Minn. Stat. § 609.347 (Supp.1975) as a rape shield provision which, among other things, stated that without a prior notice and hearing

evidence of the complainant's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order * * *.

* * * * * *

(d) for purposes of impeachment, when such evidence is offered to rebut specific testimony of the complainant.

In 1977 the supreme court made rules of evidence applicable in Minnesota. Rule 404(c)(1) in part states that without a prior notice and hearing

evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury except by court

1. We note that there is no issue before this court regarding any possible exposure of R.F. to a criminal charge as a result of his alleged conduct involving K.O., if he had been allowed to so testify.

order under the [notice and hearing] procedure * * * Such evidence can be admissible * * * only in the following circumstances:

(A) When consent of the victim is a defense in the case,

* * *; or

(B) When the prosecution's case includes evidence of semen, pregnancy or disease * * * to show the source of the semen, pregnancy or disease.

*Id.* [2] Because appellant was convicted of criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(b) under which "[c]onsent by the complainant is not a defense," Minn.R.Evid. 404(c)(1)(A) cannot be implicated in these proceedings.

Regarding the rule's failure to address impeachment, the comments state:

.The statute allowed evidence of previous sexual conduct to impeach the victim's testimony. Minn.Stat. § 609.347, subd. 3(d) (Supp.1975). This provision was not incorporated in the rule because the Committee is of the opinion that *the accused might not know whether the victim was going to testify about lack of sexual conduct until the victim had actually completed direct examination.* To impose the notice and hearing requirement does not seem to be fair in such a case. Moreover, *the prosecution and victim can obviate such impeaching testimony by avoiding general statements about the victim's sexual activity on direct examination.* For these reasons subdivision 3(d) of the statute is not incorporated into the rule. *The deletion of this provision is intended to allow the accused the traditional right to impeach the victim, without the notice and hearing requirement, if the victim's direct testimony specifically concerns the victim's previous sexual activity or lack of it.*

Minn.R.Evid. 404(c) comment (1977) (emphasis added).

The effect of rule 404(c) on admission of evidence regarding a complainant's prior sexual conduct was addressed in *State v. Caswell,* 320 N.W.2d 417, 419 (Minn.1982). There, the supreme court noted that federal rule 412, which is comparable to Minn.R. Evid. 404(c), contains a subsection "specifically allowing for admission of a victim's past sexual conduct in all cases in which admission [was] constitutionally required." *Id.* Recognizing that rule 404(c)'s strict admission prohibitions combined with its lack of a provision allowing admission when otherwise constitutionally appropriate, risked "violating the defendant's right to due process, to confront his accusers, and to offer evidence in his own defense," *id.,* the supreme court read the federal rule's requirement for admission of evidence when constitutionally mandated into the state's rule. *Id.* at 419. *See also State v. Benedict,* 397 N.W.2d 337, 340–41 (Minn. 1986).

Subsequently, in 1987 Minn.Stat. § 609.347, subd. 3 was amended. According to the statutory preamble, the statute was amended "for the purpose of consistency with the rules of evidence." *See* 1987 Minn.Laws ch. 114. The amendments, *inter alia,* deleted the portion of the statute specifically allowing admission of previous sexual conduct evidence for purposes of impeachment upon a prior notice and hearing. Additionally, the amendment added a subdivision stating "Rule 404, paragraph (c) of the Rules of Evidence is superseded to the extent of its conflict with this section." *See* 1987 Minn.Laws ch. 114, § 1 (codified at Minn.Stat. § 609.347, subd. 7 (1988)).

We cannot conclude that the statute's silence regarding impeachment combined with its superseding of the rule precludes the admission and use of evidence as described in the comment to rule 404(c). To do so would be to read into the statute the same constitutional problems that *Caswell* eliminated in the rule. Such a reading of the statute would be contrary to both

---

**2.** We note that if a torn hymen were to be classified as an injury and an injury were deemed analogous to disease under the statute, this case could fall under a broad reading of

Minn.R.Evid. 404(c)(1)(B). Assuming such an analysis is appropriate, R.F.'s testimony regarding K.O.'s previous sexual activity would go to show the potential source of the injury.

amendments designed to make the statute consistent with the rule, and the presumption that "[t]he legislature does not intend to violate the constitution of the United States or of this state." Minn.Stat. § 645.17(3) (1988).

■ Here, *on direct examination* and upon eliciting testimony from K.O. that appellant engaged in intercourse and "oral sex" with K.O., the prosecutor continued:

Q. [by the prosecutor] You said you called it oral sex. [Did] you know what oral sex was?

A. [by K.O.] Yeah, I did. I knew. *I had never done it before* but I knew what it [was].

Q. *Had you ever had intercourse before?*

A. *No.*

(Emphasis added). This is exactly the type of direct testimony that the comment to rule 404(c) attempted to avoid *but realized the propriety* of the defendant's need to impeach. K.O.'s claim of prior virginity was a result of a direct examination question specifically tailored to address her prior lack of sexual conduct,[3] and to infer outright that only the defendant could have been the source of the claimed penetration consistent with the results of the medical examination. Such testimony is hardly geared to "obviate" the need for impeachment by "avoiding statements about the victim's prior sexual activity on direct examination." Minn.R.Evid. 404(c) comment (1977). Indeed, the need for an avenue of impeachment is highlighted where the victim testifies to prior virginity, the defendant is accused of crimes requiring penetration, and the state's medical expert testifies that the victim suffered a torn hymen. Under the comment to the rule, when evidence such as R.F.'s testimony is used for impeachment, prior notice and hearing is not required. Therefore, even assuming the truth of the state's allegation that there was no prior notice of R.F.'s testimony, that lack of notice would not be sufficient to preclude admission of the contested testimony.

The state argues that *State v. Stafford,* 404 N.W.2d 918 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 26, 1987), supports its argument that R.F.'s testimony regarding his digital penetration of K.O. was properly excluded. *Stafford* is distinguishable. In *Stafford* the defense sought, through the testimony of a witness, to introduce the complainant's prior *out-of-court statements* regarding her virginity and chastity. The complainant's statements were allegedly false. Also in *Stafford* the statements sought to be introduced would have been collateral and extrinsic. That scenario is distinctly different from the instant case. Here, in light of Dr. Sharpe's testimony regarding K.O.'s torn hymen, R.F.'s testimony that he digitally penetrated K.O. would not have been either collateral or extrinsic. Additionally, it would have been made in court and would have gone directly to the merits of the case by presenting the jury with a credibility issue regarding an alternate source for the torn hymen.

To use *Stafford* and the rape shield provisions to preclude admission of R.F.'s testimony would effectively allow the state to select parts or versions of the victim's past for testimony but preclude the defendant from challenging that testimony. This is

---

3. Additionally, other transcript passages from the state's case-in-chief go directly to a claim of prior virginity and chastity on the part of K.O.:

1. A. [By K.O.] I remember [appellant] unzipping his own pants, and he took my hand and put it on his penis and like took my hand and stroked it on his penis.

Q. [By the prosecutor] Is this the first time you had ever done that?

A. Yes.

2. A. [By K.O.] I felt really embarrassed because * * * no one had ever seen me naked before * * *.

Q. [By the prosecutor] When you say no one had ever seen you naked, are you talking about boy friends * * *

A. Right.

3. Q. [By the prosecutor] What were you afraid of [about having sexual relations with appellant]?

A. [By K.O.] I don't really know what I was afraid of. I just had never been with anyone like that before and I didn't really know what to expect.

not the purpose of either the statute or the rule.

> [T]he goal of the [rape shield provisions] is to limit evidence of the complainant's *unrelated* prior sexual conduct when consent is raised as a defense.

*State v. Hagen,* 391 N.W.2d 888, 891 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Oct. 17, 1986) (emphasis added). Here, consent was not the defense. Thus, considering K.O.'s direct testimony that she had been a virgin, and considering now her testimony that appellant penetrated her and thus he alone caused the tear in her hymen, R.F.'s testimony appears far from "unrelated" to this case.

Because the contested testimony is that specifically addressed by the comments to rule 404(c), and because it goes directly to a potential source of the tear in K.O.'s hymen, we cannot say that this instance of a victim's claimed prior sexual conduct is more prejudicial than probative.

■ The state argues that even if the trial court erred in not allowing R.F.'s testimony, the error was harmless because the state thoroughly rebutted all of appellant's evidence. We cannot in good conscience accept this argument because the excluded testimony would have gone to the source of the penetration. Were R.F.'s testimony admitted, the jury would have been presented with a conflict in the testimony upon which it would have had to have rendered its credibility determination. As we have previously stated:

> The determination of the credibility of the witnesses and the weight of their testimony [is] exclusively within the province of the jury.

*State v. McDonald,* 394 N.W.2d 572, 576 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 26, 1986). Therefore, we cannot find the error harmless by proof beyond a reasonable doubt, the standard.

■ Carpenter also offered a number of K.O.'s letters to demonstrate K.O. had fabricated several instances of past sexual conduct. Carpenter on appeal contends the trial court erroneously excluded these letters. However, where, as here, consent of a complainant is not at issue, and the state did not offer letters by K.O. attesting to her virginity as part of its case-in-chief, under the rape shield provisions evidence of prior sexual conduct is only admissible on the issues of the source of semen, pregnancy, or disease. Minn.Stat. § 609.347, subd. 3(b) (1988). Since the letters do not directly address the source of semen, pregnancy, or disease no matter how broadly construed, the letters describing K.O.'s past sexual conduct were not admissible under the rule or the statute. Additionally, as the letters do not even remotely address the conduct at issue in this case, they are not necessary to allow appellant "the traditional right to impeach the victim." Thus, the trial court did not abuse its discretion in excluding these letters.

Given our determination of the need for a new trial, we need not address the departures in appellant's sentence.

## DECISION

Because the trial court's exclusion of R.F.'s testimony was an improper use of the state's rape shield provisions and deprived appellant of his ability to impeach the victim on the trial's central issue, we reverse and remand for a new trial.

Reversed and remanded.