STATE of Minnesota, Appellant,

v.

Philip Francis CARPENTER,
Respondent.

No. C6–89–225.

Supreme Court of Minnesota.

Aug. 3, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for appellant.

Joseph S. Friedberg, Minneapolis, for respondent.

WAHL, Justice.

Defendant Philip Francis Carpenter was convicted by jury verdict of criminal sexual conduct in the third degree, Minn.Stat. §§ 609.344, subd. 1(b), subd. 2, and 609.101, subd. 2 (1988), in connection with the "statutory" rape of a 14–year–old girl he was counseling, through his church youth program, as a voluntary youth sponsor. The trial court, departing from the presumptive sentence, sentenced defendant to 30 months in prison. Defendant retained separate appellate counsel and challenged his conviction. The court of appeals reversed the conviction and remanded for a new trial on the ground that the trial court had erroneously excluded evidence of alleged prior sexual conduct to impeach direct testimony by the complainant about her prior virginity. *State v. Carpenter,* 447 N.W.2d 436, 442 (Minn.App.1989). The court of appeals also held that the trial court did not err in excluding letters written by K.O. as evidence of fabrication but did not reach the sentencing issue.

We accepted review primarily to address the issue of the attempted use of extrinsic evidence of digital penetration to impeach direct testimony by the complainant of her prior virginity and whether the trial court's exclusion of such evidence improperly denied the defendant his right of confrontation. Concluding that it did not, we reverse the decision of the court of appeals and reinstate the conviction.

Defendant Philip Carpenter, age 24, was convicted of the sexual assault on evidence that he had sexual intercourse on April 11, 1988 with K.O., a 14–year–old eighth grader he was counseling through his church youth program. Defendant served as a voluntary youth sponsor with the senior high youth group at the Bloomington Assembly of God Church. His primary responsibility as a youth sponsor was to aid the senior high pastor, Rev. William Matson, and spend time with the 50 to 100 senior high youths of the church. Defendant is an attractive, personable young man who ran a painting and wallpapering

business and was well respected in the church community. His father-in-law was a wealthy and influential member of the church board of directors.

K.O. and her family had moved to Minnesota in the summer of 1987 and joined the Bloomington Assembly of God Church. K.O. joined the junior high youth group. When K.O. and her older sister, J.O., began experiencing adjustment problems, their parents contacted defendant and his wife, Adora, who had done some counseling with other youth group members. The Carpenters did not have time to counsel K.O. or J.O. that fall. However, in late February, 1988, defendant approached K.O. at church and told her he wanted to make it up to her for not paying more attention to her. The next day defendant took K.O. to Rosemount Marine to shop for a new boat for his father-in-law. Defendant introduced K.O. as his wife to the salesperson, Dale Neeley. On the way home, defendant stopped at a bar, fed K.O. chicken fingers and held her hand.

The following night after church, defendant drove K.O. in his wife's Corvette to some bluffs in Burnsville, where he nuzzled and hugged K.O. and tried to kiss her. When K.O. resisted his affections, defendant said he was just "testing" her and that she had passed the test. The next Sunday evening, defendant took K.O. to the bluffs again, this time in his Blazer. The two were lying in the rear of the parked Blazer when an Apple Valley police officer, Merle Lohse, shone a spotlight on them. Defendant explained to the officer he and his girlfriend were "necking."

Defendant and K.O. spent a considerable amount of time together. He told K.O. that he and his wife did not have a good relationship and were not sleeping together. He bought K.O. a sweater. Initially, K.O.'s mother trusted defendant but she eventually grew somewhat concerned about his attentiveness to her daughter. She met with defendant and expressed her concerns. Defendant indicated he wanted to hire K.O. to work for him at $5.00 an hour. Defendant routinely hired youth group members for painting and wallpapering work. K.O.'s mother approved of the hiring arrangement on the condition that defendant never work alone with K.O.

K.O. became increasingly confused about her relationship with defendant and confided in her school counselor, Linda Prince. Prince called Rev. Bill Matson, defendant's supervisor, and explained that a problem existed between one of his youth sponsors and a student. Rev. Matson advised defendant that it was unwise to spend time alone with a young lady. Later that night, defendant told K.O. they would have to "cool it" for a while. Rick Roades, Rev. Matson's assistant, also had two conversations with defendant urging him to break all ties with K.O. because people were beginning to talk. Defendant also spoke with K.O.'s father and assured him that nothing was going on between himself and K.O.

The physical relationship between defendant and K.O. continued to progress, however. On the night of a surprise party for one of the youth group members, defendant picked K.O. up early, took her to his home, fondled her and digitally penetrated her vagina. When defendant put his penis next to her, K.O. said, "No, not right now." Shortly thereafter while K.O was babysitting for some church members, defendant went to the house and tried to have intercourse with her, but K.O. again said "No." Defendant left but later called K.O. from his car phone and asked her what she pictured her "first time" to be like. K.O. told him she wanted to be carried over the threshold into a honeymoon suite and served champagne by her husband. Upon arriving home, K.O. found blood on her underwear.

On April 11 defendant told K.O. he had a surprise for her. He picked K.O. up at school and took her to the Holiday Inn in St. Louis Park. K.O. waited at the side door while defendant registered. The reservation was in defendant's name, but the registration form was signed "Mark Cook" and was paid for in cash. Defendant brought along a bottle of champagne and two champagne glasses in a backpack. Defendant had intercourse with K.O. twice and performed oral sex.

Afterwards, defendant took K.O. to dinner at a Bakers Square restaurant. Then he drove her home, telling her to put on overalls so that it would appear she had been working. K.O.'s family was waiting with her favorite dinner, but she was subdued and disinterested in eating. Following dinner, K.O. told her sister what had happened and two weeks later told Linda Prince. Prince called child protection which led to an investigation.

All of K.O.'s statements and copies of police reports were given to defense counsel during discovery. Dr. Leslie Sharpe examined K.O. two months after the incident at the Holiday Inn. He found a small scar on her hymen that, in his opinion, could have been the result of an injury which had occurred more than six to eight weeks earlier and had healed itself. The defense had a copy of Dr. Sharpe's one-page report in its possession before trial.

The trial lasted nine days. K.O. was on the stand for three days. Defendant denied the crime charged and the two month relationship which preceded it. His defense at trial was that K.O. was an emotionally unstable girl with a tendency to fabricate claims of sexual assault and intimacy. Defendant called many witnesses to testify as to K.O.'s reputation for lack of truthfulness.

Defendant and his wife Adora presented an alibi defense, asserting that the two of them, not defendant and K.O., spent the night of April 11 at the Holiday Inn drinking champagne and having an "intimate evening." Defendant testified that he picked K.O. up at school on April 11 to drive her to a remodelling project at a duplex near 50th Street and Chowen Avenue in Edina. He stopped at the Holiday Inn on the way to the duplex so that he

could check in before 5:00 p.m. to receive a discount rate. Adora met defendant at the hotel, they went out to eat dinner, then the two picked K.O. up at the Edina duplex and drove her home. Adora testified that K.O. questioned them in detail about the hotel and their dinner. Defendant's alibi testimony was impeached by the testimony of Steven Lagermeier, owner of the Edina duplex, who indicated that defendant bid on the job, but had not been awarded the contract.

The jury believed the witnesses of the state and found defendant guilty as charged. At a later hearing the trial court denied defendant's motion for judgment of acquittal or a new trial and sentenced him to an executed sentence of 30 months imprisonment. The court of appeals reversed the conviction, holding that the evidence concerning the alleged prior digital penetration of the complainant had been erroneously excluded, and remanded for a new trial. We accepted the state's petition for review.

1. Before considering the question of whether the trial court properly excluded evidence of alleged prior digital penetration of the complainant, we note the context in which that ruling was made, the earlier procedural rulings of the trial court and the conduct of defense counsel with regard to those rulings. The crime is what is commonly called statutory rape.[1] Consent is not a defense. Pursuant to Minnesota's rape shield laws, Minn.R.Evid. 404(c)[2] and Minn.Stat. § 609.347 (1988), defendant sought to introduce evidence of several alleged prior sexual fabrications by K.O. The trial court, after a pretrial evidentiary hearing, ruled that the proposed evidence was not admissible under Minn.R. Evid. 404(c)[3] and that defendant could not

---

1. Minn.Stat. § 609.344, subd. 1(b) (1988) states:

 A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if any of the following circumstances exist: * * * (b) the complainant is at least 13 but less than 16 years of age and the actor is more than 24 months older than the complainant * * *. Consent by the complainant is not a defense.

2. Minn.R.Evid. 404(c) was amended and redesignated as Minn.R.Evid. 412, effective January 1, 1990. See Minn.R.Evid. 404(b) (West 1990).

3. Rule 404(c)(1) provides:

 (c) **Past Conduct of Victim of Certain Sex Offenses.**[*]

 (1) In a prosecution under Minn.Stats. 609.342 to 609.346, evidence of the victim's previous sexual conduct shall not be admitted nor shall

raise specific instances of prior conduct to impeach. The defense could introduce evidence concerning the victim's reputation for truthfulness or untruthfulness in the community and the court would allow broad latitude in cross-examination. Thereafter, the trial court gave defense counsel every latitude at trial despite the fact that defense counsel's conduct continually contravened the suppression order of the trial court. Our careful review of the trial transcript makes clear to us that defense counsel repeatedly and willfully violated Minn. R.Evid. 404(c)(1) which provides that when a trial court rules that evidence of a sexual assault victim's prior sexual conduct is inadmissible, no "reference to such conduct" shall be made in the presence of the jury.[4] As the state has noted, defense counsel's repeated efforts to bring up this excluded evidence in spite of remonstrances by the trial court and the prosecutor, was precisely the type of harassing conduct that the rape shield law was enacted to prevent. *See e.g., State v. Hamilton*, 289 N.W.2d 470, 475 (Minn.1979) (implicit policy of [rape shield law] is to protect victim "from perhaps irrelevant and unnecessary 'besmirching of her character for chastity' ").

The excluded evidence at issue here, the alleged prior digital penetration of K.O.,

was not a subject of the pretrial evidentiary hearing or of the trial court's pre-trial order excluding evidence. Dr. Sharpe on the fifth day of trial, testified to K.O.'s hymenal tear and indicated on cross-examination that it might have had alternate causes, such as intercourse, digital penetration, "playing doctor," or an early childhood physical examination. On the ninth and last day of trial, defense counsel moved to call one R.F., alleging that R.F. would testify that he had slept with K.O. and penetrated her vagina digitally. R.F. had been on the witness list, but defense counsel had never disclosed evidence that R.F. had digitally penetrated K.O.'s vagina. R.F. was not mentioned or called at the pretrial evidentiary hearing, although defense counsel had the medical report of the hymenal tear and all of K.O.'s statements indicating defendant's penetration was her first sexual penetration. The trial court excluded this proffered extrinsic evidence under Rule 404(c).

 Admission of evidence concerning a victim's previous sexual conduct is strictly limited by Minn.R.Evid. 404(c). Previous sexual conduct shall not be admitted nor any reference to such conduct made in the presence of the jury except by court order according to the procedure provided in Rule

---

**4.** As noted earlier, defendant was represented by different counsel at trial and on appeal. The state has accurately described trial counsel's conduct. Appellant's Brief, n. 8, p. 19:

> Despite this clear prohibition against referring to the excluded evidence, Respondent's counsel repeatedly violated this prohibition by referring to this alleged prior conduct in his cross-examination of almost all the prosecution's witnesses * * *. Not only did defense counsel repeatedly make efforts to besmirch the victim by repeatedly referring to all of the excluded evidence through his questioning on cross-examination, he also sought to besmirch the victim's entire family. In his questioning, he repeatedly referred to the fact that J.O., K.O.'s sister, was unmarried, pregnant and allegedly did not know who was the father of her child. He also made the allegation that K.O.'s mother had suffered several nervous breakdowns. This evidence was completely irrelevant and only served the purpose of smearing or throwing dirt at K.O. and her family.

any reference to such conduct be made in the presence of the jury, except by court order under the procedure provided in rule 404(c). Such evidence can be admissible only if the probative value of the evidence is not substantially outweighed by its inflammatory or prejudicial nature and only in the following circumstances:

(A) When consent of the victim is a defense in the case,

(i) evidence of the victim's previous sexual conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue, relevant and material to the issue of consent;

(ii) evidence of the victim's previous sexual conduct with the accused; or

(B) When the prosecution's case includes evidence of semen, pregnancy or disease at the time of the incident or, in the case of pregnancy, between the time of the incident and trial, evidence of specific instances of the victim's previous sexual conduct, to show the source of the semen, pregnancy or disease.

404(c)(2).[5] In attempting to introduce this evidence, defendant has met none of the requirements of Rule 404(c)(1)(A) or (B): he has not complied with Rule 404(c) procedure; he has not shown that the probative value of the evidence substantially outweighs its inflammatory or prejudicial nature; he cannot use consent as a defense and has not shown that the state's case includes evidence of semen, pregnancy or disease at the time of the incident. The court of appeals, in its opinion, assumes that a torn hymen would be classified as an injury which could be deemed analogous to a disease under Rule 404(c)(1)(B) and that R.F.'s testimony regarding K.O.'s previous sexual activity would go to show the potential source of the injury. *Carpenter,* 447 N.W.2d 436, 440, n. 2. We cannot read the term "injury" into the statute from which the rule was derived. If the language of a statute is clear and unambiguous, the court must give effect to the plain meaning of the statute. Minn.Stat. § 645.16 (1988) and *Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986). The Federal Rules of Evidence and several states have included "injury" in their rape shield laws.[6] Minnesota has not.

■ We find, as did the trial court, the evidence of previous sexual conduct defense counsel sought to introduce to be inadmissible under Rule 404(c). The question still remains, however, whether its admission is nevertheless constitutionally required in order to prevent the violation of defendant's right to confrontation.

The Sixth Amendment ensures the defendant a right to confrontation. *State v. Hansen,* 312 N.W.2d 96, 102 (Minn.1981). The United States Supreme Court, however, in *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), makes clear that "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged or otherwise inadmissible under standard rules of evidence." *Id.* at 410, 108 S.Ct. at 653. The *Taylor* court recognized the growth of discovery devices as a salutary development enhancing the fairness of the adversary system. *Id.* at 411–12, 108 S.Ct. at 653–54. The defendant, as well as the state and the court, must comply with discovery and evidentiary requirements. Here, defendant's failure to notify the prosecution and the court of evidence of digital penetration of K.O. by R.F. violated the discovery and notice requirements of Minn.R.Evid. 404(c)(2).

Defendant was not surprised at trial. He knew in advance about R.F.'s claimed testimony, he knew of the hymenal tear and K.O.'s statement that defendant's sexual penetration was her first sexual penetration, yet he did not tell the prosecution of the evidence or make the required pretrial motion. This is not "new information discovered after the date of the hearing or

---

5. The accused may not offer evidence described in rule 404(c)(1) except pursuant to the following procedure:

(A) A motion shall be made by the accused prior to the trial, unless later for good cause shown, setting out with particularity the offer of proof of the evidence that the accused intends to offer, relative to the previous sexual conduct of the victim.

(B) If the court deems the offer of proof sufficient, the court shall order a hearing out of the presence of the jury, if any, and in such hearing shall allow the accused to make a full presentation of his offer of proof.

(C) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the accused regarding the previous sexual conduct of the victim is admissible under the provisions of rule 404(c)(1) and that its probative value is not substantially outweighed by its inflammatory or prejudicial nature, the court shall make an order stating the extent to which such evidence is admissible. The accused may then offer evidence pursuant to the order of the court.

(D) If new information is discovered after the date of the hearing or during the course of the trial, which may make evidence described in rule 404(c)(1) admissible, the accused may make an offer of proof pursuant to rule 404(c)(2), and the court shall hold an in camera hearing to determine whether the proposed evidence is admissible by the standards herein.

6. *See, e.g.,* Fed.R.Evid. 412(b)(2)(A) (source of semen or injury); Fla.Stat.Ann. § 794.022(2) (West Supp.1990) ("semen, pregnancy, injury or disease"); Me.R.Evid. 412(b)(1) (West 1990) ("semen or injury"); Neb.Rev.Stat. § 28–321(2)(a) (1989) ("semen, injury, blood, saliva, and hair") and Va.Code Ann. § 18.2–67.7(A)(1) (Michie 1988) ("semen, pregnancy, disease, or injury").

during the course of the trial" which would have established good cause for an exception under Rule 404(c)(2)(D) to wait until trial to move for the admission of R.F.'s testimony. Moreover, defendant did not offer to call R.F. to the stand, question him and make an offer of proof. There is no evidence that R.F. was available or would have testified as alleged.

Furthermore, defense counsel placed the substance of R.F.'s proposed testimony before the jury by his questioning of four witnesses: (1) The Court allowed defense to ask K.O. on cross-examination whether R.F. ever "fingered you?" K.O. denied this. (2) Defense asked Rick Roades on cross-examination whether K.O. had ever made any false allegations to him about R.F. (3) On direct examination, defense counsel asked Adora Carpenter if K.O. had told her about any events with R.F. (4) On direct examination, defense asked K.H., a friend of K.O., "Was there a conversation with [K.O.] about an act involving sexual penetration with a finger of [K.O.] by [R.F.]?" We recently held in *State v. Glaze*, 452 N.W.2d 655 (Minn.1990), that evidence has not been completely excluded when the jury learns of it through another's testimony and an attorney's remarks. *Id.* at 661.

The exclusion of evidence of alleged prior sexual conduct in this case was not of constitutional dimension. If the charge were for forcible rape and the evidence pertaining to virginity only came out at trial, a different result might be required. Here, however, we hold that under the facts and circumstances of this case, the trial court properly excluded evidence of alleged prior digital penetration of the victim offered to impeach the victim's claim of virginity.[7]

■ 2. We find no merit in defendant's contention that the trial court's exclusion of letters K.O. wrote to friends allegedly describing her past sexual conduct was improper. As the court of appeals stated, the letters "do not even remotely address the conduct at issue in this case * * *." *State v. Carpenter*, 447 N.W.2d 436, 442 (Minn. App.1989). The trial court properly excluded letters allegedly describing K.O.'s past sexual conduct.

■ 3. Because we affirm defendant's conviction, we address the sentencing issue raised on appeal below. The defendant contends that the trial court erred in departing both durationally and dispositionally from the presumptive sentence. The presumptive sentence was 18 months stayed. The trial court sentenced defendant to 30 months executed.

A trial court, in deciding whether to depart from the sentencing guidelines, "should consider whether mitigating or aggravating circumstances are present, determine if they are 'substantial or compelling circumstances' justifying departure, and then exercise its discretion and decide whether to depart * * *." *State v. Bellanger*, 304 N.W.2d 282, 283 (Minn.1981). The trial court must determine "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime" in deciding whether to depart durationally from the

---

7. Even if the exclusion of the extrinsic evidence were deemed to be of constitutional dimension, any error would likely be harmless. Under the factors set out in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), complainant's testimony was directly corroborated by several witnesses. "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684, 106 S.Ct. at 1438.

Dale Neeley testified to the interactions between defendant and K.O. at Rosemount Marine. Sergeant Lohse identified K.O. as the girl with defendant in the Blazer and so testified. A girlfriend saw defendant pick K.O. up at school on April 11. A reservation was made at the Holiday Inn in defendant's name for April 11. K.O. described the hotel and room in detail. Steven Lagermeier said defendant was not awarded the duplex bid. Several people warned defendant about his conduct and relationship with K.O. In addition, defendant was allowed unlimited cross-examination, during which he introduced the evidence to which R.F. may have testified.

sentencing guidelines. *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). This determination is also relevant to the court's decision to depart dispositionally. *See, e.g., State v. Heywood*, 338 N.W.2d 243, 243–44 (Minn.1983).

██ Abuse of positions of trust and authority are aggravating factors justifying a durational departure. *See State v. Campbell*, 367 N.W.2d 454, 460–61 (Minn.1985); *State v. Cermak*, 344 N.W.2d 833, 839 (Minn.1984). Defendant, as a church youth sponsor doing counseling work with K.O., was in position of both authority and trust. Defendant himself described his relationship with K.O. as "either forty or fifty percent of a counseling relationship." The victim and her family, as well as church leaders and other members, trusted defendant to work with the congregation's young people.

██ In determining whether to depart dispositionally, the trial court may consider the defendant's unamenability to probation and his dangerousness to the community. *State v. Ott*, 341 N.W.2d 883, 884 (Minn. 1984). Defendant was evaluated by a probation officer and a psychologist who recommended an executed sentence. The probation officer described defendant as being "conspicuously unamenable to treatment and well beyond the capture of probationary services." The psychologist stated defendant "certainly has the potential to be a risk to the community." In addition to the above listed factors, the trial court may also consider the course of conduct underlying the charge. *Cermak*, 344 N.W.2d at 837. The trial testimony of Linda Prince, Rev. Bill Matson and Rick Roades regarding their warnings and advice to defendant regarding his relationship with the victim supports the conclusion that defendant was not willing to or capable of controlling his behavior. Finally, the trial court could also consider defendant's actions in threatening the victim and witnesses after charges had been brought in imposing its sentence. We hold that the trial court did not err in departing both durationally and dispositionally from the presumptive sentence and

sentencing defendant to 30 months imprisonment.

We reverse the decision of the court of appeals and reinstate the judgment of conviction.

Reversed; judgment of conviction reinstated.