STATE of Minnesota, Respondent,

v.

Jerry C. VOLK, Appellant.

No. C8–87–951.

Court of Appeals of Minnesota.

March 22, 1988.

Review Denied May 18, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Lisa A. Berg, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Paul Engh, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Appellant Jerry C. Volk was convicted of second degree murder. He appeals from the denial of his motion for a new trial and from an upward departure from the Minnesota Sentencing Guidelines. We affirm.

## FACTS

Volk and a companion, John Hamilton, hitched a ride from Montana to Minnesota. They arrived in Minneapolis early in June 1984. They had little money, and no particular place to go.

Hamilton testified that he and Volk planned to pose as prostitutes, pick up a homosexual man, and rob him. Volk testified he never intended to rob anyone, and that he only wanted a place to sleep that night.

They encountered the victim, Traetow, at a 7–11 store near Loring Park. Traetow invited Volk and Hamilton into his car and they drove to Traetow's apartment. The three sat in Traetow's living room and talked. Volk and Hamilton gave different accounts of what happened next. Each admitted involvement in the murder, but maintained that the other shot Treatow. Volk and Hamilton separately made their way back to Oregon.

Police found Traetow dead on the scene. His legs and hands had been taped. There was a broken vodka bottle on the living room floor. Police identified Volk's thumbprint on the neck of the bottle. Police never recovered the gun.

Hamilton and Volk were arrested after David Castro, a mutual friend, volunteered the following information to police. Castro testified that one month after the murder, Volk related the following story. Volk said that he and Hamilton picked up a homosexual male (Traetow) in Minneapolis and went to his apartment intending to rob him. Volk hit Traetow over the head with a liquor bottle, and then he and Hamilton bound Traetow and carried him into a bedroom. When Hamilton left the apartment to search Traetow's car for money, Traetow freed himself and attacked Volk. Volk wrestled with Traetow and then shot him twice. After the shooting, Volk and Hamilton fled in Traetow's car.

Castro testified that he met Hamilton some months after Volk related the story. Without knowing that Volk had already confessed, Castro testified that Hamilton relayed basically the same story to Castro. Castro testified that authorities dropped burglary charges against him in exchange for his appearance and testimony at Volk's trial.

Volk testified that he discussed the incident with Castro. Volk said Hamilton talked to Castro before he did, and that he was surprised that Hamilton had said he (Volk) shot Traetow. Volk did not disagree with Castro wanting to avoid further discussion of the incident.

Hamilton pleaded guilty to second degree murder. He agreed to testify against Volk if the state would recommend a 108–month sentence to run concurrent with an unrelated 60–month sentence in Nevada. At trial, Hamilton related essentially the same story as Castro.

Volk pleaded not guilty to one charge of aggravated robbery in violation of Minn. Stat. § 609.245 (1984), and to one charge of first degree murder in violation of Minn. Stat. § 609.185(3). A jury found him guilty of aggravated robbery and of second degree (unpremeditated) murder under Minn. Stat. § 609.19(1). The judge sentenced him to 303 months (100–month upward departure). Volk appeals based on evidentiary rulings, instructions, and sentencing.

### ISSUES

1. Did the trial court properly exclude evidence of misconduct offered against Hamilton, the state's chief witness?

2. Did the trial court properly refuse to instruct the jury on lesser included offenses and "mere presence"?

3. Did the trial court properly depart from the Minnesota Sentencing Guidelines?

### ANALYSIS

#### I.

Volk argues the trial court improperly refused to allow him to inquire about three instances of Hamilton's conduct. The trial court in its discretion may allow inquiry into instances of conduct which tend to prove that a witness is untruthful. Minn. R. Evid. 608(b).

#### Forgery

In this case, Volk had hearsay information that Hamilton stole one of his father's business checks, forged his father's signature, and gave it to a third party (Alexander) to negotiate. Alexander was convicted of forgery; it does not appear that Hamilton was charged. Alexander was listed as a state witness, but did not testify at trial.

The trial court erroneously characterized the forgery as unprobative of veracity. Forgery is relevant to veracity and may be used to impeach a witness under rule 608(b). *State v. Clark*, 296 N.W.2d 359, 368 (Minn.1980). This type of impeachment is permissible, however, exclusion in this case is harmless error.

Hamilton was abundantly impeached by prior convictions and the plea agreement. Although the priors did not involve dishonesty, this is the unique case in which the witness is properly considered a suspect, and any criminal record he has is nearly as important as previous dishonesty. Also, Hamilton's veracity was clearly called into question by the plea agreement and his motive to lie to absolve himself.

#### Firearms

Volk argues that evidence that Hamilton possibly possessed firearms one year after the murder and that he displayed a gun and made a vague threat to Alexander in 1984 should not have been excluded under rule 608(b) and *State v. Hawkins*, 260 N.W.2d 150 (Minn.1977). Volk's attempt to introduce this evidence under rule 608(b) is meritless. Possible possession of firearms is not relevant to veracity. Volk's argument for admission under *Hawkins*, however, is more substantial.

"[W]here the issue is whether in fact the defendant killed the deceased, evidence tending to prove that another person did the killing is admissible." *Id.* at 158 (footnote omitted). However, proper foundation must be laid for the admission of such evidence to avoid consideration of collateral matters. *Id.* at 159.

In *Hawkins*, the defense theory was that state's witness Czuchry, not defendant Hawkins, shot the victim. Hawkins tried to introduce evidence that Czuchry's perception and memory was adversely affect-

ed by heavy drinking, that Czuchry was violent when drunk, and that Czuchry once pulled a gun on his wife. The trial court excluded this evidence.

In reversing the conviction, the supreme court found that Czuchry's own testimony, placing himself at the scene, satisfied the foundation requirement. The court stated that "collateral acts of violence by Czuchry could be relevant to whether he committed the crime." *Id.* at 160.

Hamilton admitted being at the scene, and it is possible that Hamilton shot Traetow. However, the instances of Hamilton's misconduct are so vaguely supported and unconnected to this crime that we believe the trial court did not abuse its discretion by excluding them.

Any possible error in excluding evidence concerning Hamilton was harmless beyond reasonable doubt. *See State v. Gustafson,* 379 N.W.2d 81, 85 (Minn.1985). Defense counsel was allowed to cross-examine Hamilton extensively about past crimes, access to firearms, and possible motives for testifying against Volk. The exclusion of other evidence tending to show Hamilton could have shot Traetow is non-prejudicial under the circumstances. *See State v. Deans,* 356 N.W.2d 674, 676 (Minn. 1984).

Furthermore, Volk's conviction is supported by other evidence. Volk admits he was present when the murder occurred. Police found Volk's thumbprint on a broken bottle. The placement of the print indicates that Volk held the bottle upside down by the neck, which is not how one would grasp a bottle while drinking. This evidence corroborates Hamilton's and Castro's testimony that Volk hit Traetow over the head with a bottle. The jury could reasonably believe the rest of Castro's testimony to the effect that Volk admitted shooting Traetow.

Volk's own testimony and his thumbprint on the bottle at least establish accomplice liability if it is assumed that Hamilton shot Traetow.

A person is criminally liable for a crime committed by another if the person inten-

tionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

Minn.Stat. § 609.05, subd. 1 (1984). All that is necessary for a conviction of aiding in a crime is that "the accused plays at least some knowing role in the commission of the crime and takes no steps to thwart its completion." *State v. Jones,* 347 N.W. 2d 796, 801 (Minn.1984), *quoting State v. Strimling,* 265 N.W.2d 423, 429 (Minn. 1978). Volk testified that he knew Hamilton intended to rob Traetow, that he helped carry Traetow into the bedroom, and that he did not physically intervene in the struggle resulting in Traetow's death. The jury received an instruction on aiding and could reasonably have found from this evidence that Volk aided Hamilton in murdering Traetow.

Volk also argues that evidence of Hamilton's prior misconduct should be admitted under a "reverse-*Spreigl*" analysis. The defendant may show that crimes of a similar nature, time and method were committed by a third party to cast doubt on the identification of the defendant as the perpetrator of the crime charged. *State v. Bock,* 229 Minn. 449, 458, 39 N.W.2d 887, 892 (1949). This showing must be supported by clear and convincing evidence. *State v. Billstrom,* 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967).

The evidence offered by Volk fails to meet this standard. The evidence that Hamilton possessed firearms or threatened someone with a gun is far from clear and convincing. Also, they are not similar in time, nature, or method to the crime charged.

## II.

Volk claims the trial court improperly refused to instruct the jury on (1) heat of passion manslaughter; (2) withdrawal and abandonment; and (3) mere presence at scene not evidence of guilt. The trial judge is in the best position to decide which instructions are necessary and the court's discretion must be respected. *State v. Link,* 289 N.W.2d 102, 107 (Minn.1979).

### Manslaughter

In murder cases, the test for determining which, if any, lesser degrees of murder should be submitted is "whether the evidence would reasonably support a conviction of the lesser degree and at the same time is such that a finding of not guilty of the greater offense would be justified." *State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975).

■ In this case, there is no evidence to support an instruction for heat of passion manslaughter. An element of manslaughter is "heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances[.]" Minn.Stat. § 609.20(1) (1984).

Volk argues that he was intoxicated, exhausted from travel, revolted by Traetow's homosexual advance, and surprised by Traetow's attack. Hamilton described Volk as "pretty disgusted," "pretty pale," and "nervous" after the murder.

Assuming for argument the truth of these circumstances, there was no provocation sufficient to elicit a heat of passion response. A person of ordinary self-control under like circumstances would simply have left the scene.

The trial court found that there was no basis to give a manslaughter instruction because "it's simply not supported by the facts." This conclusion is convincingly supported, and well within the court's discretion.

### Withdrawal/Abandonment

Volk requested an instruction that a defendant is not liable for a crime if he abandoned his purpose and made a reasonable effort to prevent the crime. *See* CRIM. JIG, 4.02 (1985). Volk also requested an instruction that if the defendant abandoned his intention to commit the crime, and the crime was not committed, defendant is not guilty of attempt. *See* CRIM.JIG 5.04 (1985). The trial court denied these instructions because they were not supported by the evidence.

■ To justify these instructions, the evidence must show the defendant took affirmative, reasonable efforts to prevent the crime. *State v. Lucas,* 372 N.W.2d 731, 739 (Minn.1985). Arguing that he affirmatively and reasonably acted to prevent the crime, Volk claims that

(1) he thought about trying to stop the crime;

(2) he tried to stop the struggle between Hamilton and Traetow;

(3) he yelled "No, stop" before Hamilton fired the shots.

■ Even if Volk testified truthfully, he still did not do enough to prevent the crime. The trial court correctly refused the instructions because they had no support in the record.

### Mere Presence

Volk argues the trial court improperly edited the following requested language from the aiding and abetting instruction:

mere presence or acquiescence or inaction is not sufficient participation by the defendant to find him guilty of a crime committed by another.

Volk correctly points out that language to this effect is routinely included in federal instructions. *See U.S. v. Manning,* 618 F.2d 45, 47–48 (8th Cir.1980) (failure to include language is reversible error).

However, Minnesota courts considering this language have generally refused to include it. *State v. Daniels,* 361 N.W.2d 819, 832 (Minn.1985); *State v. Phelps,* 328 N.W.2d 136, 140 (Minn.1982); *State v. Boyd,* 410 N.W.2d 445, 447 (Minn.Ct.App. 1987); *State v. Safranski,* 391 N.W.2d 44, 46 (Minn.Ct.App.1986).

■ The trial court properly refused this instruction. There is no evidence that Volk was merely passive. He got into Traetow's car, went to Traetow's apartment, and helped Hamilton carry Traetow into the bedroom. Volk was much more than a passive bystander.

### III.

The jury found Volk guilty of second degree murder and aggravated robbery. The court departed from the presumptive

sentence of 203 months and gave Volk 303 months, citing the following "substantial and compelling" factors:

The victim was treated with particular cruelty in this case. Before he was murdered, he was bound at the ankles, knees and had been bound at the wrists. He had also been gagged. It would most certainly be reasonable to consider that when placed in such a state with his captors armed would be terrorized. In addition, the extreme cruelty is accentuated by the fact that he was cold-bloodedly murdered by being shot at point blank range in the head after he had already been shot at point blank range in the back, which would by the testimony of the medical examiner be sufficient to totally paralyze him at that point.

Secondly, the victim was therefore undoubtedly most vulnerable; he was incapacitated at the time; he could present no possible present physical threat to the shooting.

Third, the crime of murder in the second degree was committed in the victim's home. And the term of art that is used by the courts nowadays, I guess, it was an invasion of his own privacy. But I think the point of it is that it was in his own home. [Volk] and Mr. Hamilton had been invited there, were his guests, [they] had eaten dinner with him, drinking his liquor that he had made available to [them], and ultimately he was murdered in his hallway.

### Cruelty

▪▪▪ Binding the victim may be considered in determining whether the offense was committed in a particularly serious way. *State v. Winchell,* 363 N.W.2d 747, 751 (Minn.1985). Volk aptly points out that there is no polite way to murder someone; every murder is cruel in its own way. However, Minnesota courts do distinguish among levels of cruelty. The victim in this case was bound and gagged and the court properly considered this factor to justify departure.

### Vulnerability

▪▪▪ Vulnerability due to age, infirmity, or reduced mental or physical capacity which was known to the offender is a substantial aggravating factor. Minnesota Sentencing Guidelines II.D.2.b.(1). In this case, the victim was not physically or mentally incapacitated. He was vulnerable because he was bound and gagged. The court improperly took this factor into consideration because the court was examining the effect of being bound and gagged, rather than the mental or physical capacity of the victim.

### Zone of Privacy

▪▪▪ Invading the victim's zone of privacy may be another aggravating factor. *State v. Morales,* 324 N.W.2d 374, 377 (Minn.1982). However, it cannot be said that Volk invaded Traetow's privacy because Traetow invited Volk and Hamilton into his home. This factor was improperly considered as an invasion; however, it could be considered an exploitation of trust.

▪▪▪ Abuse of trust relationship between victim and perpetrator may be an aggravating factor. *State v. Campbell,* 367 N.W.2d 454, 461 (Minn.1985). However, *Campbell* and similar cases involve substantial reasons for trust relationships. Here the victim picked up two strangers at a 7–11 after midnight for prostitution. It can be said that Traetow was more foolish than trustful.

▪▪▪ Despite the weakness in two factors cited by the trial court, a 50% upward departure is not an abuse of discretion. The jury could have found that Volk smashed a bottle on Traetow's head, then shot him twice at point blank range.

### DECISION

The court properly controlled cross-examination, allowing some evidence, and excluding other evidence. The court properly instructed the jury, and the departure from the presumptive sentence was proper.

Affirmed.