STATE of Minnesota, Respondent,

v.

John Michael COPELAND, Appellant.

No. C6–01–2253.

Court of Appeals of Minnesota.

Feb. 25, 2003.

John Stuart, State Public Defender, Jodie L. Carlson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge, ANDERSON, Judge, and STONEBURNER, Judge.

## OPINION

WRIGHT, Judge.

Appellant John Michael Copeland challenges his conviction of and sentencing for first-degree assault, arguing that the district court abused its discretion when it (1) admitted evidence of appellant's past assaultive conduct against his fiancée, who was not the victim of the charged offense, and (2) departed upward by one year based on several aggravating factors. Copeland also raises several arguments in his pro se brief. We affirm.

## FACTS

On the evening of April 14, 2001, appellant John Michael Copeland and his fiancée, Kathy Washington, visited Champions Bar in Minneapolis, where they encountered Letitia Bell, an acquaintance of Washington. All three left Champions and went to Bell's residence. Shortly thereafter, Washington and Copeland began to argue. Bell sought assistance from her boyfriend, Randy Allen, who was asleep upstairs. During the subsequent fight between Allen and Copeland, which involved a metal bar, Allen sustained severe injuries to the head and face. Police officers arrived, arrested Copeland, and took a statement from Washington.

Copeland was charged with one count of third-degree assault involving Allen, in violation of Minn.Stat. § 609.223, subd. 1 (2000). Pending trial, the state amended the complaint twice. First the state amended the complaint to charge Copeland with one count of first-degree assault of Allen, in violation of Minn.Stat. § 609.221, subd. 1 (2000). The state later added two counts of second-degree assault of Washington by Copeland, in violation of Minn.Stat. § 609.222, subd. 2 (2000), and one count of attempted murder of Allen by Copeland, in violation of Minn.Stat. § 609.19, subd. 1(1) (2000).

Before Copeland's trial, the state sought admission of Copeland's prior acts of domestic abuse involving Washington, arguing that the evidence was admissible under Minn.Stat. § 634.20 (2000) and caselaw. On the first day of trial, the district court dismissed the two counts of second-degree assault involving Washington. But during the trial, the district court granted the state's motion to admit the evidence of prior domestic abuse involving Washington and Copeland.

Officer James Loveland testified that, on the night of the assault, Washington told him that Copeland had physically assaulted her and Allen with a metal bar after Copeland accused Washington of cheating on him. But at trial Washington testified that Allen was the aggressor, she did not argue with Copeland about his jealousy, and Copeland never hit her. Washington also testified that Copeland had never displayed jealousy regarding Washington and other men. On cross-examination, Washington admitted calling the police on Copeland on several prior occasions, but stated that jealousy was not "one of [their] issues." Over Copeland's objection, Washington's testimony was impeached by that of Officer Jason King. Officer King testified that, in June 2000, he responded to a

domestic call made by Washington, which arose from Copeland's jealous accusations regarding Washington and another man.

Also during the trial, a juror notified the district court of his contact with Officer Loveland, one of the state's witnesses. The district court consulted with counsel, and Copeland's attorney decided not to inquire further.

The jury returned guilty verdicts on the first-and third-degree assault charges and a not guilty verdict on the attempted murder charge. On September 20, 2001, Copeland was sentenced to 110 months' imprisonment, a 12–month upward durational departure. The district court based the departure on three factors: (1) invasion of the victim's zone of privacy; (2) particular cruelty; and (3) failure to summon medical assistance. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion when it admitted evidence of appellant's prior assaultive conduct involving a person other than the victim of the charged offense?

II. Did the district court abuse its discretion when it imposed an upward durational departure of 12 months?

III. Do appellant's pro se claims warrant relief?

## ANALYSIS

### I.

■ We will not overturn a district court's evidentiary rulings absent a clear abuse of discretion. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989). Evidence of other acts or wrongs is not admissible to prove a person's character. Minn. R. Evid. 404(b). But

[e]vidence of similar prior conduct by the accused against the victim of domestic abuse * * * is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn.Stat. § 634.20 (2000). In addition,

[c]haracter evidence which tends to show the "strained relationship" between the accused and the victim is relevant to establishing motive and intent and is therefore admissible.

*State v. Mills*, 562 N.W.2d 276, 285 (Minn. 1997) (citing *State v. Flores*, 418 N.W.2d 150, 159 (Minn.1988)).

■ The state argued at trial for admission of Copeland's prior assaultive conduct against Washington under Minn.Stat. § 634.20 and the "strained relationship" caselaw. The district court admitted the evidence, concluding that the "strained relationship" doctrine and section 634.20 apply to a material witness who is not the victim of the charged offense. Copeland argues that evidence of his prior acts of domestic abuse involving Washington is not admissible under Minn.Stat. § 634.20 because she was not the victim of the charged offenses. We agree. The district court's basis for admitting the evidence of prior domestic abuse was erroneous.

When the evidence was admitted, the charges in which Washington was the alleged victim had been dismissed. Thus, evidence regarding prior domestic abuse committed against Washington was no longer admissible under section 634.20 or the "strained relationship" doctrine. The remaining charges alleged an assault against Allen. Section 634.20 does not apply to the assault charges involving Allen, because he was not "the victim of domestic abuse" by Copeland. Minn.Stat.

§ 634.20. By its plain language, the statute applies only in cases where a person is charged with domestic abuse and the state intends to introduce evidence of prior domestic abuse involving the accused and the victim of the currently charged offense. To qualify as domestic abuse under the statute, physical violence must involve a "family or household member." Minn. Stat. §§ 518B.01, subd. 2 (2000), 634.20. Because the charges against Washington were dismissed and because Allen was not the victim of domestic abuse, the district court erred in admitting evidence of Copeland's prior assaultive conduct toward Washington under Minn.Stat. § 634.20.

Further, we find no precedent for applying the "strained relationship" doctrine to illustrate the nature of the relationship with any person other than the victim. Although some cases allow the admission of evidence of the accused's actions toward a third party, such evidence is always used to show a strained relationship with the victim. *See Flores*, 418 N.W.2d at 159 (holding evidence of appellant's threats toward victim's friends on day of offense admissible to show strained relationship between appellant and victim). We thus hold that the district court erred in concluding that evidence of a "strained relationship" between Copeland and Washington could be used in the charges involving Allen.

■ Despite our holding, we find the error to be harmless, because the evidence, albeit extrinsic, was otherwise admissible under Minn. R. Evid. 616. *Cf. State v. Cole*, 594 N.W.2d 197, 199 (Minn. App.1999) (holding that error harmless where victim's statements inadmissible under Minn. R. Evid. 803(4) but admissible under Minn.Stat. § 595.02, subd. 3 (1998)). From the record, it appears that the district court used the analytical framework

of the "strained relationship" rule to admit evidence of Washington's bias, not Copeland's motive for the offense. One rationale given for the admission of the relationship evidence was "to explain why somebody might change her story."

Evidence of Copeland's prior assaultive behavior was admissible, in light of the change in Washington's story, to demonstrate her bias in favor of Copeland due to her fear of him. Shortly after the incident, Washington told police that Copeland had assaulted her and Allen. But she recanted at trial, testifying that Allen was the aggressor and that Copeland did not assault her. Extrinsic evidence of bias, such as the nature of Copeland's prior assaults against Washington, may be properly admitted to attack the credibility of the witness under Minn. R. Evid. 616. *See generally State v. Underwood,* 281 N.W.2d 337 (Minn.1979); *see also State v. Waddell,* 308 N.W.2d 303, 304 (Minn.1981) (holding that, in sexual-assault trial, prosecutor permitted to use extrinsic evidence of prior sexual assault involving defendant and girlfriend on cross-examination to show bias of defendant's girlfriend due to her sexual relationship with defendant and her fear of him).

## II.

Copeland also argues that the district court abused its discretion when it imposed a 12–month upward durational departure from the presumptive sentence of 98 months. He asserts that the upward departure was not justified because his offense was no more serious than a typical first-degree assault.

■ The decision to depart from the sentencing guidelines rests within the district court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996). Generally, when determining

whether to depart, a district court must decide "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Broten,* 343 N.W.2d 38, 41 (Minn.1984). "When a district court departs [from the sentencing guidelines], it must articulate substantial and compelling reasons justifying the departure." *State v. Schmit,* 601 N.W.2d 896, 898 (Minn.1999) (citation omitted).

■ The district court stated that its departure was based on a violation of the victim's zone of privacy and exploitation of trust, the particular cruelty and brutality of the assault, and Copeland's failure to summon medical aid. Copeland argues that the district court's "zone of privacy" justification is unfounded and asserts that the district court's other stated reasons do not support a 12–month upward departure.

■ An upward departure is appropriate when a defendant "invades the zone of privacy that surrounds the victim's home." *State v. Kindem,* 338 N.W.2d 9, 18 (Minn. 1983). Citing *State v. Volk,* 421 N.W.2d 360, 366 (Minn.App.1988), *review denied* (Minn. May 18, 1988), Copeland argues that, because he was invited into Allen's home, this factor does not apply to his case. Copeland's reliance on *Volk* is misplaced. In *Volk,* the victim invited the attacker into the home. In the instant case, it was Bell, not Allen, who invited Copeland into the home. That Bell invited Copeland into the residence while Allen slept upstairs does not negate the fact that this offense occurred in Allen's home where, by virtue of the zone of privacy, he had a reasonable expectation of security that was shattered by Copeland's violent assault. *State v. Coley,* 468 N.W.2d 552, 555 (Minn.App.1991) (affirming zone-of-privacy departure where "[t]he victim's home [was] no longer the 'island of securi-

ty' upon which the victim has previously relied."). The district court did not abuse its discretion in departing from the guidelines based on Copeland's invasion of Allen's zone of privacy.

 Copeland also contends that the departure cannot be based on particular cruelty, because Allen's injuries do not support a finding that the offense was committed in a particularly serious or cruel way. Minnesota Sentencing Guideline II.D.2.b.(2) lists "particular cruelty" as an appropriate rationale for an upward departure. Gratuitous infliction of pain will qualify as "particular cruelty." *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981).

When sentencing Copeland, the district court noted that, after hitting Allen multiple times,

> [Copeland] stood over [Allen] with all [his] power and strength with that heavy metal bar and [Copeland] inflicted a mortal wound that was so severe when Copeland left the house and * * * went to a neighbor's house * * * [Copeland] said [he] thought [he] killed [Allen].

The record establishes that Allen's injuries were severe and consistent with a particularly cruel beating. Based on the manner of the assault and the severity of the resulting injuries, we conclude that the district court did not abuse its discretion in finding particular cruelty in this case. *See State v. Smith*, 541 N.W.2d 584, 590 (Minn. 1996) (finding particular cruelty where victim "was knocked unconscious by the first blow and that when he regained consciousness he was being punched and kicked.").

Copeland also argues unpersuasively that the facts do not support a departure for failure to summon medical assistance because Allen was not helpless. The district court noted that Copeland "left Allen for dead." Considering Allen's condition, he was undoubtedly unable to secure assistance on his own. The district court did not abuse its discretion in departing upward by 12 months.

## III.

Copeland also makes several arguments in his pro se brief. Many of these arguments do not warrant discussion, and the remaining arguments, which we address below, are without merit.

### A. Prosecutorial misconduct

 Copeland argues that prosecutorial misconduct shifted the burden of proof in his case. A conviction should be reversed if the "misconduct appears to be inexcusable and so serious and prejudicial that a defendant's right to a fair trial is denied." *Smith*, 541 N.W.2d at 588 (citation omitted). Copeland argues that the cumulative effect of "extrinsic evidence" regarding Copeland's prior acts of domestic abuse shifted the state's burden of proof. Because we have concluded that this evidence was admissible to attack Washington's credibility by showing bias under Minn. R. Evid. 616, Copeland's claim of prosecutorial misconduct is unfounded.

### B. Ineffective assistance of counsel

Copeland next argues that he was denied his right to effective assistance of counsel at trial. To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy a two-pronged test evaluating deficiency and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, the defendant must show by a preponderance of the evidence that counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064; *Dukes v. State*, 621 N.W.2d 246, 252

(Minn.2001). Second, the defendant must show by a preponderance of the evidence that counsel's deficient performance resulted in prejudice. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Dukes,* 621 N.W.2d at 252.

■ Copeland first claims that his attorney was admittedly ineffective because the district court denied his motion for continuance to better prepare for the amended charges. But Copeland was not convicted of any of the counts added in the amended complaints. Thus, his argument lacks merit.

■ Second, Copeland argues that his attorney was ineffective when he failed to inquire further upon learning of a juror's prior contact with Officer Loveland, a witness for the state. When the district court consulted with counsel regarding this matter, Copeland's attorney declined to inquire further into the nature of the relationship between Officer Loveland and the juror. In part, Copeland's attorney stated:

> [o]nce he's on the jury, it doesn't make any difference anymore. We can't throw him off even if the cop had busted him on the skull with a billy club. If he knows the guy and hates him, didn't recognize the name, but knows the face, even if it's a lousy incident, he's on the jury, and we can't go back and pick other people and throw him off, and I don't think even an inquiry is proper. I object to an inquiry.

> \* \* \* \*

> We don't want to tamper with this jury. They're sworn, and I don't believe any further inquiry is appropriate.

Even if counsel's performance were deficient, without more, the record fails to establish that the decision by Copeland's attorney prejudiced Copeland. Because he has not shown by a preponderance of the evidence that his counsel's performance was deficient and resulted in prejudice, Copeland's claim of ineffective assistance of counsel fails.

## DECISION

We hold that the district court abused its discretion when it admitted evidence of prior domestic abuse involving Copeland and Washington under Minn.Stat. § 634.20 and the "strained relationship" doctrine, but the evidence was otherwise admissible under Minn. R. Evid. 616. The district court's upward departure was well within its discretion. Appellant's pro se claims are without merit.

**Affirmed.**