*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0100**

Ronald James Kettle, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 11, 2014
Affirmed
Cleary, Chief Judge**

Beltrami County District Court
File No. 04-K5-05-000855

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Timothy R. Faver, Beltrami County Attorney, Bemidji, Minnesota (for respondent)

        Considered and decided by Cleary, Chief Judge; Larkin, Judge; and Klaphake,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant challenges a district court order denying his motion under Minn. R. Crim. P. 27.03, subd. 9, to correct his 2007 sentence for second-degree felony murder of his mother. He argues that the record does not support the district court's reasons for departing from the presumptive sentence under the Minnesota Sentencing Guidelines and that his 220-month sentence therefore is not authorized by law and should be reduced to 165 months. We affirm.

## FACTS

On June 5, 2005, appellant Ronald James Kettle appeared at the Beltrami County Law Enforcement Center and reported that he had killed his mother H.B. During an interview, appellant stated that he had been doing drugs, woke up next to H.B.'s body, and believed that he had killed her with a kitchen knife. Police officers went to H.B.'s apartment and discovered her body, a large amount of blood throughout the apartment, and blood smears that appeared to have been partially cleaned up. An autopsy revealed numerous blunt-force and sharp-force injuries, extensive hemorrhaging of the brain, and multiple rib fractures. The medical examiner determined that H.B. died from blunt-force trauma to the face and head. Appellant was subsequently charged with second-degree intentional murder and second-degree felony murder. The state filed a notice that it was seeking an upward durational departure from the sentencing guidelines based on three aggravating factors: (1) H.B. was treated with particular cruelty for which appellant

should be held responsible, (2) the offense occurred within H.B.'s zone of privacy, and (3) appellant violated his position of trust with H.B.

At a hearing on January 10, 2007, appellant pleaded guilty to second-degree felony murder resulting from assault, and the state agreed to dismiss the charge of second-degree intentional murder. Appellant waived his right to have a jury decide aggravating sentencing factors and permitted those factors to be determined by the district court. Appellant stated that he had been residing in his "elderly" mother's apartment for approximately a year and a half on the day of the murder and that he "would help her with her medicine, apply her medicine into her eyes and that sort of thing." He also stated that he had been "helping her out around her house," but then clarified that "she did [household chores] herself. She didn't need help." He claimed that he had no memory of the murder or of going to the police station and confessing to killing H.B., but he stated that he believed that he was guilty and would have been found guilty by a jury "based upon the information contained in the complaint and all of the disclosure materials, police reports, statements, medical reports, all of that."

The sentencing hearing was held on February 13, 2007. The state requested that appellant receive a sentence of 220 months, a durational departure from the presumptive guideline sentence of 165 months. As the basis for departure, the state argued that the offense occurred within H.B.'s zone of privacy of her home and that appellant violated his position of trust with H.B. because appellant "was living with his mother, and as an adult child had a responsibility for care of his elderly mother." The state also argued that H.B. was treated with particular cruelty, resting this argument on the extent of H.B.'s

3

injuries and her resulting death.  Appellant's counsel argued that aggravating factors were not present and requested that appellant receive the presumptive guideline sentence.  The district court determined that the state had proven the aggravating factor of violation of a position of trust, stating "[H.B.], a 70 some year old mother living with her son, who is currently 46 years of age, at that point in time there was a position of trust.  And clearly when you review the information provided, this crime does violate that position of trust."  The district court also determined that the state had proven the aggravating factor of particular cruelty, stating that "[i]n reviewing the pictures [of the crime scene] it is clear that this is a crime that was committed with particular cruelty."  Appellant was sentenced to 220 months, and he did not file a direct appeal of his sentence or initiate postconviction proceedings.

On June 14, 2013, appellant filed a motion under Minn. R. Crim. P. 27.03, subd. 9, for correction of his sentence to 165 months.  He claimed that his 220-month sentence is unlawful because the record does not support a finding of aggravating factors.  Following a hearing, the district court issued an order denying the motion.  The district court held that the upward durational departure was warranted because appellant violated a position of trust with H.B. in that he lived with his elderly mother and assisted her with medical needs, she "had every reason for placing substantial trust in [appellant]," and he abused that trust by committing a crime against her.  The district court also held that the departure was warranted because appellant treated H.B. with particular cruelty in that "[t]he injuries in this matter were a gratuitous infliction of pain and cruelty above and

4

beyond the kind usually associated with the commission of second degree felony murder." This appeal followed.

## DECISION

"The court may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9; *see also Washington v. State*, 845 N.W.2d 205, 210 (Minn. App. 2014) (stating that, although the text of rule 27.03, subdivision 9, authorizes district courts to correct sentences sua sponte, courts have not prevented parties from invoking the rule by motion). "On appeal from the district court's denial of a rule 27.03 motion, this court will not reevaluate a sentence if the [district] court's discretion has been properly exercised and the sentence is authorized by law." *Anderson v. State*, 794 N.W.2d 137, 139 (Minn. App. 2011) (alteration in original) (quotation omitted), *review denied* (Minn. Apr. 27, 2011).

As a preliminary matter, we note that the state has not, either before the district court or this court, disputed appellant's ability to challenge the durational departure through a motion under rule 27.03, subdivision 9, rather than through a postconviction petition. A postconviction petition must generally be filed within two years of conviction, sentence, or appellate disposition, *see* Minn. Stat. § 590.01, subd. 4(a) (2012), but "'the two-year time limit [in section 590.01, subdivision 4(a)] does not apply to motions properly filed under' rule 27.03, subdivision 9." *Washington*, 845 N.W.2d at 211 (alteration in original) (quoting *Vazquez v. State*, 822 N.W.2d 313, 318 (Minn. App. 2012)); *see also State v. Pugh*, 753 N.W.2d 308, 311 (Minn. App. 2008) (stating that a defendant cannot forfeit or waive review of an illegal sentence), *review denied* (Minn.

5

Sept. 23, 2008). Minnesota courts have limited the scope of motions "properly filed" under rule 27.03, subdivision 9, preventing defendants from using such motions simply to circumvent the postconviction deadline. *See generally Washington*, 845 N.W.2d at 210–14 (discussing caselaw that has addressed the proper scope of motions under rule 27.03, subdivision 9). Rule 27.03, subdivision 9, may be used only to assert that a sentence is "not authorized by law" in that "the sentence is contrary to an applicable statute or other applicable law." *Id.* at 212–14 (stating that "a sentence may be 'authorized by law' even if the sentence is incorrect in ways that might have justified reversal on direct appeal").

In *Washington*, this court held that a claim was not within the scope of rule 27.03, subdivision 9, when the defendant challenged his enhanced sentence under the dangerous-repeat-offender statute on the ground that he did not have two prior convictions of violent crime. *Id.* at 214–15 (stating that the defendant's claim was not that the sentence was contrary to law or applicable statutes, but was "only a fact-based challenge to the record of the sentencing hearing and, ultimately, to the district court's findings of facts relevant to his sentence"). In *State v. Borrego*, this court held that concurrent sentences imposed unintentionally when the sentencing guidelines presumed consecutive sentences, such that the defendant effectively received a downward departure not supported by mitigating factors, were not sentences "not authorized by law" correctable under rule 27.03, subdivision 9. 661 N.W.2d 663, 666–67 (Minn. App. 2003). The court stated that "[n]o statute or case law forbids the district court from imposing concurrent sentences in this case" and that, while consecutive sentences were presumed under the sentencing guidelines, "this presumption does not make the

6

[concurrent] sentence[s] unauthorized." *Id.* at 667. The court explained that "[t]he purpose of the sentencing guidelines is simply to offer a measure of evenhandedness and predictability to defendants and to ensure their sentences are not based upon inappropriate grounds," but that "neither party has a right to demand that the sentence imposed be in accord with sentencing guidelines." *Id.* (quotations omitted).

Appellant contends that the record does not support a finding of the aggravating factors that the district court relied on when imposing his enhanced sentence. He argues that there were no substantial and compelling circumstances to support a sentencing departure and that the district court abused its discretion by imposing his sentence. As was the case in *Washington*, appellant is not claiming that his sentence is contrary to a statute or law, but is contesting the district court's findings relevant to his sentence. As this court held in *Borrego*, the fact that a sentence departs from the presumptive guideline sentence, even if without justification, does not make the sentence "not authorized by law." Appellant's arguments should have been pursued through a direct appeal or timely postconviction petition rather than through a motion under rule 27.03, subdivision 9. But because the state has not challenged appellant's motion on this basis and the district court ruled on the merits of appellant's arguments, we will address the merits of appellant's motion in this instance.

"The sentences provided in the Sentencing Guidelines Grid are presumed to be appropriate for every case. The judge shall utilize the presumptive sentence provided in the sentencing guidelines unless the individual case involves substantial and compelling circumstances." Minn. Sent. Guidelines II.D. (2004). "Substantial and compelling

circumstances are those demonstrating that the defendant's conduct in the offense of conviction was *significantly* more or less serious than that typically involved in the commission of the crime in question." *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011) (quotations omitted); *see also Taylor v. State*, 670 N.W.2d 584, 587 (Minn. 2003) ("'Substantial and compelling circumstances' are those circumstances that make the facts of a particular case different from a typical case."). A departure from the presumptive guideline sentence is reviewed for an abuse of discretion. *State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003).

### A.    Violation of a Position of Trust with the Victim

The district court held that the record supported a finding that appellant violated a position of trust with H.B. Abuse of a position of trust is an aggravating factor that justifies a durational departure. *State v. Carpenter*, 459 N.W.2d 121, 128 (Minn. 1990); *see also State v. Volk*, 421 N.W.2d 360, 366 (Minn. App. 1988) ("Abuse of trust relationship between victim and perpetrator may be an aggravating factor."), *review denied* (Minn. May 18, 1988).

Appellant correctly asserts that, in many cases, this aggravating factor is used when the victim is a child who was somehow dependent on the defendant. *See, e.g.*, *Carpenter*, 459 N.W.2d at 128 (affirming a durational departure for criminal sexual conduct where the defendant was the victim's church youth counselor); *State v. Beard*, 574 N.W.2d 87, 92–93 (Minn. App. 1998) (examining a durational departure for second-degree felony murder where the defendant was the victim's daycare provider), *review denied* (Minn. Apr. 14, 1998). But this aggravating factor has also been applied in

8

various cases that did not involve child victims. *See, e.g.*, *State v. Lee*, 494 N.W.2d 475, 482 (Minn. 1992) (affirming a durational departure based, in part, on the factor of violation of a position of trust where the defendant community leader sexually assaulted two women); *State v. Campbell*, 367 N.W.2d 454, 461 (Minn. 1985) (affirming a durational departure based, in part, on the factor of violation of a position of trust where the codefendants knew the victim as neighbors and convinced the victim to open her door to them); *see also State v. Rourke*, 681 N.W.2d 35, 40–41 (Minn. App. 2004) (stating that "we have found no cases that limit the application of [the factor of abuse of a position of trust] to child victims" and "defendants who are adult authority figures"), *aff'd in part, rev'd in part, and remanded on other grounds*, 773 N.W.2d 913 (Minn. 2009). At the time of the murder in this case, appellant was living with his mother in her apartment and was helping her with her medication. Under these circumstances, the district court did not abuse its discretion by finding that appellant violated a position of trust with H.B.

**B.      Treatment of the Victim with Particular Cruelty**

The district court also held that the record supported a finding that appellant treated H.B. with particular cruelty. An aggravating factor that may be used as a reason for a sentencing departure is that "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.2.b.(2) (2004). "[P]articular cruelty involves the gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question." *Rourke*, 773 N.W.2d at 922 (quotations omitted); *see also Dillon v. State*, 781 N.W.2d 588, 601 (Minn. App. 2010) (stating that "victim injuries have been relied on in multiple

9

departure cases" and that victim injury may be "a useful indicator of the degree of brutality involved"), *review denied* (Minn. July 20, 2010); *Volk*, 421 N.W.2d at 366 (stating that "there is no polite way to murder someone; every murder is cruel in its own way," but that "Minnesota courts do distinguish among levels of cruelty"). *Compare State v. Vogelpohl*, 326 N.W.2d 635, 636 (Minn. 1982) (affirming a durational departure based on the factor of particular cruelty where the defendant was convicted of second-degree murder after repeatedly hitting the victim on the head with hammers and stuffing her mouth with paper), *and State v. Rathbun*, 347 N.W.2d 548, 548–49 (Minn. App. 1984) (affirming a durational departure based on the factor of particular cruelty where the defendant was convicted of second-degree murder after repeatedly stabbing the victim), *with Tucker*, 799 N.W.2d at 586–88 (reversing a durational departure based on the factor of particular cruelty where the defendant was convicted of second-degree felony murder after he fired a single gunshot, hitting the victim, and then fled the scene).

Appellant correctly asserts that any case of felony murder resulting from assault will involve serious injury to the victim. But in this case, H.B. was stabbed numerous times, there was extensive hemorrhaging of her brain, and her face and body were badly mangled. Her body and clothing were covered in blood, and there was blood throughout her apartment. Under these circumstances, the district court did not abuse its discretion by finding that appellant treated H.B. with particular cruelty.

**Affirmed.**

10